PRESS PUB. CO. v. GILLETTE.

(Circuit Court of Appeals, Second Circuit. December 14, 1915.)

No. 70.

1. LIBEL AND SLANDER ⬤=123—QUESTIONS FOR JURY—PRIVILEGE.
    Plaintiff, a former army officer, who had resigned and gone into private business, but had applied for reinstatement, joined with other Americans residing in Mexico in a memorial to the President, reviewing conditions in Mexico, making a savage attack on Madero, and violently criticizing the policy of the administration of this country in dealing with Mexico since Huerta's advent. He also addressed other communications to the President and Secretary of State, in which his bitter opposition to such policy was expressed most vehemently. Defendant's newspaper, in commenting on the memorial, referred to its signers as a "troop of Benedict Arnolds." The court charged, and defendant's counsel agreed, that this meant that their conduct was traitorous and treasonable. *Held*, that whether this transcended the limits of fair criticism was a question for the jury, and the denial of defendant's motion for a directed verdict was not error, especially as it cannot be held that criticism of the policy and conduct of the administration in time of peace,

though severe, bitter, and vehement, is traitorous and treasonable, even when indulged in by a former army officer, who is asking reinstatement.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. ☜123.]

**2.** LIBEL AND SLANDER ☜50½—PRIVILEGE—TEST.

In determining whether an alleged libelous article is privileged, as constituting fair and reasonable comment, its relevancy to the subject commented on is not the sole test; there being also a question as to whether it goes beyond reasonable limits.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. ☜50½.]

**3.** LIBEL AND SLANDER ☜123—QUESTIONS FOR JURY—PRIVILEGE.

Whether the limits of fair criticism have been transcended by an alleged libelous article may sometimes be a question of law, but ordinarily is one of fact for the jury.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. ☜123.]

**4.** LIBEL AND SLANDER ☜128—REVIEW—AMOUNT OF DAMAGES.

In an action for libel, the finding of the jury as to the amount of compensatory damages cannot be disturbed by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 380–385; Dec. Dig. ☜128.]

In Error to the District Court of the United States for the Southern District of New York.

Action by Cassius E. Gillette against the Press Publishing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York, against plaintiff in error, who was defendant below. The action was for libel against the corporation which publishes the New York World; the jury was instructed that there was no proof of actual malice, and that they could award only compensatory damages, if any. Their verdict was for $20,000. The publication complained of reads as follows:

"A Score of Benedict Arnolds.

"To a score of Americans in Mexico we are indebted for a public admission that the late President Madero was lynched and that his death was necessary to the salvation of the country. These Americans are for the most part concessionaries or representatives of Big Business, but they are led, we are sorry to say, by a retired officer of the United States Army (meaning plaintiff).

"Offensive as this shameful confession may be to the conspirators who murdered Madero and denied it, what shall be said of the impudence that in their behalf instructs the government at Washington to recognize Huerta; that attributes the attitude of President Wilson to personal prejudice; that pronounces Mexicans unfit for self-government; that proclaims the lie that we give no native a vote in the Philippines; and that compares despotic rule south of the Rio Grande with conditions in the District of Columbia, where the franchise is withheld?

"This memorial has been presented to General Huerta, but it is also to be transmitted to Washington. It is the most significant document that the Mexican situation has yet produced. It proves that great American business interests in Mexico are murderous, as well as tyrannical and treasonable. It shows, furthermore, the sort of advice on which the usurper Huerta has been acting.

"What punishment is adequate for such a troop of Benedict Arnolds? Is there a crime that our commercial greed will not condone? Is there an affront

to the American name and the American government that our adventurers in foreign lands will not perpetrate in the hope of gain?"

In the same issue of the paper there was an article in the news columns, which, so far as presently pertinent, reads as follows:

"21 Americans Laud Huerta; Score U. S. Policy in Mexico.

"Group in Mexico City, Headed by Major C. C. Gillette, Retired, Says Peons are Unfit to Vote and Asks Postponement of Election.

"Mexico City, Oct. 10—Provisional President Huerta today listened to the reading of a remarkable document presented to him for his approval by a group of Americans who disapprove of President Wilson's Mexican policy and seek to impress Washington with that fact. * * *

"The peculiar feature of the petition is that it was drafted, in main, by Major Cassius C. Gillette, U. S. A., retired, whose signature also heads the list of signers.

"Gillette, who several years ago resigned from the army to accept a job as engineer in charge of filtration plant construction in Philadelphia, recently has been promoting mining ventures in Mexico. Despite his retirement, he still is subject to discipline by the War Department. Curiosity is expressed here as to how the Secretary of War will regard Gillette's brusque criticism of President Wilson, his commander in chief. * * *"

There was no claim to recover damages on account of this news article.

Howard Taylor, of New York City, for plaintiff in error.

Arthur C. Palmer, of New York City (John Ingle, Jr., of New York City, of counsel), for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). At the end of the case defendant's counsel moved for a direction of a verdict upon the ground that the defense of privilege had been made out as a matter of law, and reserved exception to the court's refusal to do so. There were other errors assigned to portions of the charge and to admission or exclusion of testimony. The main proposition contended for by defendant is that the *facts* set forth in the editorial were proved, and that the comment was fair and reasonable, and therefore privileged.

The facts set forth in the editorial, as enumerated in defendant's brief, are these:

1. That a score of Americans in Mexico, of whom plaintiff was one, had admitted that the late President Madero was lynched, and had expressed the sentiment that his death was necessary to the salvation of the country.

2. That these Americans were for the most part concessionaries or representatives of Big Business.

3. That they were led by a retired officer of the United States Army.

4. That the Americans (including plaintiff) were undertaking to instruct the government at Washington to recognize Huerta.

5. That they attribute the attitude of President Wilson to personal prejudice.

6. That they pronounced Mexicans unfit for self-government.

7. That they untruthfully asserted that the United States gives no native a vote in the Philippines.

8. That they compared despotic rule south of the Rio Grande with conditions in the District of Columbia, where the franchise is withheld.

9. That the memorial of the score of Americans (including plaintiff) had been presented to General Huerta and also had been (or was about to be) transmitted to Washington.

It is conceded that the plaintiff was not a retired officer of the United States Army, that he had been an officer thereof, that he had resigned and gone into private business prior to the occurrences referred to, and that he had applied for reinstatement in the Army. The testimony relied on to prove the facts above enumerated consists mainly of several articles, petitions, protests, letters, etc., written by, or at least signed by, the plaintiff. The principal one of these is a memorial to the President of the United States, dated September 27, 1913, and signed by plaintiff and some 20 other American citizens, who state that they have resided in Mexico severally for periods ranging from 6 to 35 years. It sets forth early conditions in Mexico and briefly recites its history down to the advent of Diaz. It reviews Diaz's long administration, and the social, political, and economical condition of Mexico at the date of the memorial. How accurate this part of the memorial may be we do not know; similar statements have been publicly made before and since by persons who had been in Mexico for a longer or shorter time. There is also a savage attack on Madero; whether justified or not the record does not disclose. It ends with the suggestion that it was a good thing for Mexico that he was put out of the way. The rest of the document is a violent criticism of the policy of the present administration of this country in dealing with Mexico since Huerta's advent.

Without going further into any of this literature, it may be assumed for the purposes of this appeal that, with the exception of the statement that plaintiff was an officer on the retired list of the Army, the "facts" enumerated on defendant's brief were proved.

[1, 2] The facts being proved, defendant's counsel contends that the comment on them was privileged, because it was fair and reasonable. "Fair and reasonable" comment, as he defines it, is comment which is "relevant, germane, and relates to the subject in hand." In substance, this is a contention that relevancy is the sole test to be applied. We do not understand this to be the law; there still remains the question whether "the comment went beyond reasonable limits." Gandia v. Pettingill, 222 U. S. 452, 32 Sup. Ct. 127, 56 L. Ed. 267. But, even if relevancy were the only test to be applied, the defendant in this case would be no better off. Surely no one would contend that, when the facts showed that a person had been caught passing counterfeit 50-cent pieces, it would be relevant to refer to the occurrence as the "Discovery of Another Jack the Ripper."

We may take a single phrase from the editorial, which, referring to the memorial that was the subject of comment, and to the plaintiff and others who signed it, said: "What punishment is adequate for such a troop of Benedict Arnolds?" We assent to the proposition that this phrase cannot be construed to imply a statement that the troop of signers had offered to sell a fortified post of the United States to the commander of an enemy army for money and other valuable considerations. The trial judge held that the phrase "charac-

terized plaintiff's conduct as traitorous and treasonable, because that is what Benedict Arnold means." With this part of the charge defendant's counsel says "we quite agree," and that construction may be accepted here.

Besides the memorial, other communications from plaintiff to the President and to the Secretary of State were put in evidence. Manifestly he was bitterly opposed to the Mexican policy of the administration and expressed his opposition most vehemently. Apparently neither plaintiff nor the author of the editorial have modeled their style in accordance with the suggestions contained in Whipple's interesting essay on the "Economy of Invective." We have carefully read the memorial and all the other documents, also the testimony of plaintiff, direct and cross, and fail to find anywhere in them any statements which are "traitorous and treasonable." It would involve the prescribing of a novel rule of conduct in this country to hold that, in time of peace, criticism of the policy and conduct of an administration, even though severe, bitter, and vehement, is "traitorous and treasonable." The doctrine of lèse majesté, as distinguished from treason as defined in the Constitution, has no place in our political system.

We do not perceive how the circumstance that plaintiff was once an officer of the Army, who, before his deliverances here in evidence, resigned and engaged in private business, changes the situation, nor the further circumstance that he had asked to be reinstated in the army. While he is a private citizen there seems to be no good reason why he should not be treated as such.

[3] The question whether the limits of fair criticism have been transcended may sometimes be a question of law, but ordinarily it is a question of fact for the jury, and it seems to us it was one for the jury in this case. The charge to the jury was exceedingly well stated and involved no error prejudicial to defendant. Indeed, although a few of the assignments of error refer to it, defendant's counsel frankly admits that it was fair and impartial. The only fault he finds with it is that it should have ended with a direction to find for the defendant, which he asserts was its "logical conclusion." That proposition has been disposed of supra.

[4] We do not think it necessary to refer to the few alleged errors in admission or rejection of testimony; they seem to us unimportant. The finding of the jury as to the amount of damages cannot be disturbed by this court.

The judgment is affirmed.