## SHRYOCK v. S. P. CALKINS & CO.

(Circuit Court of Appeals, Fourth Circuit.   January 10, 1918.)

No. 1509.

1. LIBEL AND SLANDER ☞9(1)—ACTIONABLE LIBEL—PUBLICATION TENDING TO INJURE IN BUSINESS OR OCCUPATION.

A written publication, which affects one injuriously in his trade or calling and contains imputations against his honesty and integrity, and which would as its natural and proximate consequence occasion pecuniary loss, constitutes a prima facie cause of action and is libelous per se, and the right follows to such damages as must be presumed to proximately and necessarily result from such publication.

2. LIBEL AND SLANDER ☞80—ACTION FOR LIBEL—PLEADING.

The logical elements of a declaration for libel are, first, the creating or making of a written document either libelous per se or libelous by reference to circumstances, and, next, its publication, and no further particulars are necessary to fully inform defendant of plaintiff's claim.   If the pleadings set up these facts, and the libelous character per se of the document and its publication be proven, plaintiff is entitled to some damage, the amount of which it is peculiarly within the province of the jury to determine under all the circumstances of the case.

3. LIBEL AND SLANDER ☞99—ACTION FOR LIBEL—PLEADING.

Defendant in an action for libel is not entitled to a bill of particulars from plaintiff, setting out the persons to whom the libel was published, with a statement of the amount of damages claimed because of each such publication.

4. LIBEL AND SLANDER ☞104(1)—ACTION FOR LIBEL—EVIDENCE OF MALICE.

A copy of a libelous publication sent by defendant to plaintiff is competent evidence in an action for the libel on the question of malice.

5. LIBEL AND SLANDER ☞50½—PRIVILEGED COMMUNICATION—QUALIFIED PRIVILEGE.

Where, in response to a request by the publisher of a trade paper and rating book for information of his complaint against plaintiff, defendant, instead of stating the facts as claimed by him, furnished a copy of a circular, which he wrote and had printed, containing libelous matter concerning plaintiff, such communication was not privileged.

6. LIBEL AND SLANDER ☞50—PRIVILEGED COMMUNICATION—QUALIFIED PRIVILEGE.

The fact that a defendant, in voluntarily sending circulars containing libelous matter concerning plaintiff to others, asked their opinion as to the propriety of publishing the same, did not render such communications privileged.

7. LIBEL AND SLANDER ☞124(1)—ACTION FOR LIBEL—INSTRUCTIONS.

Instructions given by the court in an action for libel *held* without error.

8. EVIDENCE ☞472(1)—MATTERS IN ISSUE—ACTION FOR LIBEL.

On the trial of an action for libel, it was not error to exclude testimony of a witness as to whether he considered the alleged libelous publication given him a confidential communication.

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action at law by S. P. Calkins & Co. against F. A. Shryock.   Judgment for plaintiffs, and defendant brings error.   Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harry R. Kern and T. W. Harrison, both of Winchester, Va. (R. T. Barton, Jr., of Winchester, Va., on the brief), for plaintiff in error.

James H. Malone, of Memphis, Tenn., and Randolph Harrison, of Lynchburg, Va. (Harrison & Long, of Lynchburg, Va., on the brief), for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges, and SMITH, District Judge.

SMITH, District Judge. F. A. Shryock, the plaintiff in error in this case, was an apple dealer in Frederick county, Va., and in the latter part of 1913 sent a postal card, which was received by S. P. Calkins & Co., the defendants in error, advertising his apples. S. P. Calkins & Co. were fruit brokers carrying on business in Memphis, Tenn. As the result of subsequent telegraphic communications between the parties Calkins & Co., as brokers, sold for Shryock 1,000 barrels of York Imperial apples at $3.75 per barrel, less brokerage of $10 per car, of which five carloads were sold to M. E. Carter & Co. of Memphis, to whom they sold one car to be shipped about November 3d and another car about November 10th. These two first cars were shipped, and on receipt of the first it was rejected by Carter & Co. as being in bad condition, and, under subsequent telegraphic communications between Shryock and Calkins & Co., Carter & Co. were authorized to sell the car of apples for the account of Shryock. The second car was also rejected by Carter & Co. on account of the condition, and, after telegraphic communications between the parties, Calkins & Co. were by Shryock authorized to do the best they could, and thereupon sold it to Carter for $3 per barrel. The result of the sales of the apples was a loss over and above the contract price estimated by Shryock as equal to $576.25. Great difference of opinion as to the action of Calkins & Co. and Shryock's treatment developed between the parties.

In the summer of June, 1914, Shryock prepared a circular which is the libelous writing set up in the declaration. This circular was headed "Catchum and Skinnem." and then contained the other alleged libelous statements in full. Shryock first showed his rough draft to one Bentley of the firm of Kern & Campbell, and then sent the draft to a printer in Winchester and printed 400 of the circulars. The circular as printed had the words "Catchum and Skinnem" as a caption at the top, and of these circulars with that caption, according to Shryock's own admission, one copy was given to the representative of a publication called "The Packer"; another copy was given to the representative of the Produce Reporter Company, who published a book called the Blue Book, which appears to have been a book containing the ratings of persons engaged in the produce brokerage business, and included S. P. Calkins & Co. He also inclosed a copy of the circular with the words "Catchum and Skinnem" at the top to Calkins & Co., informing them that he had printed it for the trade papers and the trade in general. After hearing from The Packer, whose opinion he asked, as to whether he incurred any responsibility for liability for issuing this circular, he cut out or tore off the caption

"Catchum and Skinnem," and then sent out the circular to a number of fruit dealers and fruit trade journals, according to the defendant, amounting to 15 in all. He sent the circular, accompanied with a short letter asking if, in the addressee's opinion, the circular was likely to make him liable to the parties concerned if he had it published, and inclosing an envelope for reply.

In January, 1915, the declaration in this case was filed, claiming damage for the publication of the libelous matter contained in the circular, for damages done to the plaintiff in their business connections as brokers, and also for general damages done to them to their good name, fame, and credit, by a libelous publication of the kind. To this declaration on the 27th March, 1915, the defendant pleaded the general issue of not guilty, and moved the court that the plaintiffs be required to file a bill of particulars of their claim, and obtained at the same time leave to plead specially to the declaration within 30 days. Subsequently, on 16th April, 1915, the court overruled the motion for a bill of particulars, and the defendant thereafter filed no special plea, but went to trial upon the declaration and the plea of not guilty, being the plea of the general issue. At the trial the jury returned a verdict in favor of the plaintiff, and it is from the judgment on this verdict that the writ of error in this case has been taken.

[1] The first assignment of error is to the ruling of the presiding judge below, refusing defendant's motion that the plaintiffs be required to file a bill of particulars of their claim. The motion as stated in the transcript is very ambiguous; it simply says a bill of particulars of the complaint or claim of the plaintiffs. Whether thereby was meant a bill of particulars of the number of libelous circulars issued by the defendant, or a bill of particulars of the items of his damages, does not appear. The argument of the counsel for the plaintiff in error is upon the line that the bill of particulars he was entitled to have was a bill of particulars setting out the damages claimed as to each separate party to whom the publication was claimed to have been made of the libelous document. A written publication, which affects one injuriously in his trade or calling and contains imputations against his honesty and integrity, and which would as its natural and proximate consequence occasion pecuniary loss, constitutes a prima facie cause of action and is libelous per se; and the right follows to such damages as must be presumed to proximately and necessarily result from such a publication. In an action for libel, if the document be libelous, then damages follow as a matter of course—damages of some amount. The extent of those damages depends upon the circumstances of the case, such as the malice of the defendant, the offensive character of the libel, the pain caused to the injured party, the number of publications, the general circumstances of the libel, independent of any actual specific loss on each publication.

[2] The logical elements of declarations for libel are, first, the creating or making of a written document either libelous per se, or libelous by reference to circumstances, and, next, its publication. If the pleadings set up these facts, and the libelous character per se of the document and its publication be proven, the plaintiff is entitled to some

damage. Libel has been said to be peculiarly a case in which the assessment of damages is for the jury under all the circumstances of the case. No further particulars are necessary to fully inform the defendant of the plaintiff's claim. It may be that under such a declaration the court would exclude testimony of any specific instance of damage done, such as the loss of a position and its accompanying salary, unless specifically pleaded; but upon the general issue, under the general question of damage done by the publication of the malicious libel, it would be sent to the jury to determine under all the circumstances what were the proximate damages that necessarily would follow the publication. Without overloading the plea by extensive evidentiary matter, it would be impossible for a plaintiff in the case of a wide publication to state how much damage resulted from the document brought to the attention of every party who read or heard of it. It may have been read by thousands. The test is the general damage done by its general current publication in the community, that damage being perhaps less according as the circle of the people made acquainted with it may be restricted either in number or class.

[3] There is no necessity, therefore, or requirement of any kind, that the plaintiff in an action for libel should set out specifically each party to whom the libel was published, with a statement of the accompanying amount of damages claimed to have resulted from the publication to that particular person. Where each publication is relied upon as a separate and independent cause of action, as distinct from the general damage resulting from the publication of the libel, then the fact and circumstances of that separate publication should be averred. Where, however, the libel is pleaded on generally as one cause of damage, then the proof of a number of different publications is competent as evidence to establish the widespread circulation of the libel and the actual malice of the defendant as intensifying the necessary and proximate damages. It is true that the declaration does not distinguish between the circulars with the caption "Catchum and Skinnem" and those without it. The words "Catchum and Skinnem," although perhaps more offensive to the plaintiff, added nothing to the charge of fraud made in the circular itself, and called for no bill of particulars as to the separate publication of the two.

Further, with regard to any bill of particulars sought as to the number of people to whom the libel was communicated or published, that should be more peculiarly within the knowledge of the defendant than of the plaintiff; the plaintiff only knows by report or hearsay of the general current knowledge of the publication of the libel, but the defendant himself must know to whom in the first instance he himself directly communicated it or published it. It would not appear, therefore, that the presiding judge below was in error in overruling the motion for a bill of particulars.

[4] The second assignment of error is to the presiding judge's refusal to charge that the copy of the circular described in the declaration, which was sent to the plaintiff by the defendant, was not a libel, and was not to be considered in arriving at their verdict. It is evident,

however, that the sending the copy of the circular to the plaintiffs might be, in the opinion of the jury, strong evidence of malice. The sending of an offensive and insulting document to the party so insulted is held to be competent evidence on the question of malice. Injury to the feelings, and consequent mental suffering, is held to be one of the elements of damage. To flaunt the fact of a libelous publication by sending it to the party injured is a circumstance the jury have a right to consider in coming to their conclusion as to the actual malice of the defendant and the wound to the feelings of the plaintiff. It is thus entirely proper, upon the question of malice as affecting the question of damages (as well as of libel, in cases where malice is a necessary element of the existence of a libel), that the sending to the party libeled of the defamatory document in question is competent testimony to go to the jury. In this case it is more competent upon the question of malice, because it was inclosed in another written document, a letter from Shryock to Calkins & Co., notifying them that he had printed the libelous document for the trade papers and the trade in general.

[5] The third and tenth assignments of error may be considered together. They practically raise the question whether or not the judge should have charged the jury that the sending of the two circulars with the heading "Catchum and Skinnem" to the publisher of The Packer and also to the agent of the Blue Book publication, or the Produce Reporter Company, were privileged or conditionally privileged in either case. There was no evidence that the plaintiff in error furnished those circulars in such manner to either of the representatives of these two concerns as to bring his act within the doctrine of qualified privilege. So far as The Packer is concerned, the paper published by the owners of The Packer, the defendant had no request whatsoever from that paper for information. He showed it to the representative of the paper, who happened to be in Winchester, looking up subscribers and taking subscriptions. The representative of the paper came to Shryock, but did not ask for any information about Calkins & Co., or his transactions, but asked for a subscription, and the defendant thereupon showed the circular to the representative and asked his opinion about it. He volunteered the information to the representative of The Packer to get his opinion as to whether or not "it would be wise" to have the circular published. There was no circumstance connected with the delivery of this document to the representative of The Packer which would make it qualifiedly privileged.

With regard to the circular to the representative of the Produce Reporter Company, who published the Blue Book, the evidence of the defendant is that the representative of the publisher of the Blue Book came to him to get full information of his complaint against S. P. Calkins & Co.; that the defendant answered all questions that he asked, and then handed one of these circulars to him, and told him that this circular explained his side of the case as well as he could possibly tell it to him. In the first place, it is to be noted that this circular was not a simple statement to the Produce Reporter Company of the facts of the case. It contained a characterization which was outside of mere information, and could not have been in any wise called for in any re-

lation of the defendant to that concern for information furnished to the publishers of the Blue Book. As stated by the counsel for the plaintiff in error in his brief:

"There will be no denial on our part but that a privileged occasion may be abused, and that if the defamer exceeds the privilege of the occasion he will be liable."

Without deciding whether or not information of this character, communicated in the shape of voluntary information to a publication of the character of the Blue Book, is qualifiedly privileged, it is evident that the occasion did not call for any such publication as the defendant made. The instruction asked by defendant was that the copies given to the Reporter Company and The Packer were not libels and could not be considered by the jury. Any such unqualified instruction would have been unsound. The instruction of the presiding judge that in no instance mentioned in the evidence was the dissemination of the printed circular in question privileged does not, under the circumstances of this case, appear erroneous. The publication to The Packer was clearly not privileged, and the publication to the publishers of the Blue Book was of a libelous character, so uncalled for as to put it outside of the claim of qualified privilege. There had been two preceding publications of the libel with the caption "Catchum and Skinnem," one to Bentley Kern, and the other to the printer who printed it. The circular handed to the publishers of the Blue Book was not the giving of a piece of confidential information confined to the giver and the recipient, but the repetition of a libelous publication already made, and in any event could be considered by the jury upon the existence of malice.

[6] The fourth assignment of error is to the presiding judge's refusal to instruct the jury that if the copies of the alleged libelous documents, which had been by the defendant Shryock sent or delivered to the several persons and publishers named in the testimony of the defendant, had been sent or delivered in good faith, for the purpose alone of soliciting opinions as to the propriety of publishing the circular, then that they were privileged communications, and not libels upon the plaintiff, and that the jury should find for the defendant. The unsoundness of this assignment of error appears in the proposition that a person could thereby, under guise and pretense of asking for information as to proposed action, circulate and publish his libel as extensively as he saw fit. It is incredible that the circulars were sent merely for the purpose of eliciting information; but, even if they were, they contained libelous charges, and therefore the defendant was not entitled to the instruction mentioned in this assignment.

[7] The fifth assignment of error is for an instruction, which was refused by the court in the manner and form as asked as set out in the bill of exceptions No. 6, but which was correctly charged by the presiding judge as set out in the bill of exceptions No. 12, and any error referred to in bill of exceptions No. 6 covered by this assignment was cured.

Assignment Sixth. There was no evidence whatsoever to show that the loss in the plaintiffs' business could be referred to any other

cause than the libelous attack of the defendant. The plaintiffs proved the making of the libel, its publication, and the loss of business. Even, however, if the proposition were correct, it is corrected by the presiding judge in his instruction as to the limitation as to the damages to be allowed by the jury set out in bill of exceptions No. 9, which is that the—

"plaintiffs should be allowed fair compensation for the loss or injury, if any, to their business, for the insult to them, including mortification or mental suffering, if any, inflicted upon them by the dissemination of the charges, and for injury to their reputation as men and citizens, which you may believe from the evidence was the approximate result of the dissemination of the aforesaid circular. By approximate result I mean a result which in your judgment was the natural and probable consequence of the dissemination of the defamatory charges in question, and such as should have been foreseen by the defendant."

This charge to the jury made the finding of the damages to their business depend upon whether that loss or injury, if any, to them, in their business, was the proximate result of the dissemination of the circular.

Assignments of error 7, 8, and 9 appear to the court to be wanting in merit, as the correctness of the instructions appears to be unquestioned.

[8] Assignment No. 11, to the refusal of the court to permit a witness on behalf of the defendant to ask whether he considered the circular a confidential communication, is without weight. It is for the court to decide from all the circumstances if the circumstances be admitted, or for the jury to decide where the question of fact is submitted to them by the court, whether or not the alleged libelous document was a confidential communication. The mere opinion of a person to whom it was published (he not being shown to hold any such relations such as would constitute it a privileged or qualifiedly privileged communication) is not competent.

Assignment 12 is only an assignment of error to the refusal of the presiding judge to grant a new trial on the ground that the verdict was contrary to the law and evidence, as set forth in the assignments of error, which have been already considered, and upon the further ground that the verdict was excessive, and need not be considered.

The judgment below must therefore be affirmed.