## CABEL et al. v. UNITED STATES.
### No. 3529.

Circuit Court of Appeals, First Circuit.
July 31, 1940.

Philip Bergson, of Boston, Mass. (Harry Bergson, of Boston, Mass., on the brief), for appellants.

Edward O. Gourdin, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts rendered upon the verdict of a jury in a suit in which the United States sought to recover certain payments alleged to have been erroneously made to the defendants, the appellants, in the course of dealings with them in 1920–22 when the United States, through the War Department, was selling large quantities of surplus subsistence commodities.

There were several counts in the declaration covering different transactions. Verdicts were rendered for the plaintiff on some counts and for the defendants on others.

At the close of the evidence the defendants made a motion that verdicts in their favor be directed on all the counts in the declaration and, within ten days, moved to have the verdicts against them and the judgment entered thereon set aside and to have judgment entered in accordance with their motion for directed verdicts, in conformity with the provisions of Rule 50 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Defendants also made a motion for a new trial. All these motions were denied.

This appeal involves only the second, fifth and sixth counts, on each of which a verdict was rendered for the plaintiff.

There was a preliminary hearing before a master who was appointed "to hear the parties and their witnesses, to examine their books and vouchers, and to report to the court his findings of fact thereon".

In Count Two the plaintiff alleged that in 1922, when its disbursing officer paid $3,507.22 to the defendants to cover certain discounts and refunds on sundry sales of merchandise, a subsequent audit disclosed the fact that the amount due the defendants had been previously credited to them on other sales. The suit was brought to recover the amount found to have been paid in error. The master reported $3,507.22 due the plaintiff and the verdict was for that amount.

The master found the fact of the sales and the duplication of credits as claimed by the plaintiff. His findings were based on evidence before him consisting of photostatic copies of checks in payment of the refund claimed to have been erroneously made, and certain written memoranda showing the transactions in question, together with the testimony of a Government auditor who pointed out the errors which resulted in the duplicate payments. A clerk in the War Department, named Prague, who made up the original compilation on which duplicate payments were made, also testified before the master and admitted the duplication. The documents offered in evidence before the master were at first thought to be copies only and their admissibility as evidence was questioned on the ground of an alleged insufficient certification, and the master in his report made alternative findings depending upon the ruling of the court on the admissibility of the documentary evidence. On resubmission to the master and a further hearing by him the witness Prague testified again and to the effect that the documents referred to were duplicate originals. The master then eliminated his alternative finding based on the admissibility of these documents and found the fact of the duplication of credits in the amount claimed.

■ Prague was called as a witness by the defendant at the trial before the jury and in his testimony slightly modified the positiveness of his previous statement before the master that the documents were duplicate originals, saying, in effect, that in his best judgment they were duplicate originals, or "as far as he knew". The defendant requested an instruction to the effect that if the jury should find that the Prague audit (a collection of the documents mentioned) was not a duplicate original, the jury should disregard the same and find for the defendants. The requested instruction was not given, nor was there any occasion for it. Prague's testimony related to the admissibility of the exhibit in evidence before the master, where he had previously testified that the exhibit was a duplicate original and this testimony he did not repudiate. The issue before the jury was whether there had been a duplication of credits, and if so, in what amounts. The only evidence on that point was the report of the master finding the fact of duplication.

The appeal from the denial by the district judge of the motions to direct a verdict and that judgment be entered for the defendants, raises the question whether there was any substantial evidence to support the verdict.

■ The evidence before the jury in the form of the master's report of the facts being uncontradicted, it is apparent that there was substantial evidence before the jury and that its finding cannot be disturbed. Boatmen's Bank v. Trower Bros. Co., 8 Cir., 181 F. 804, and cases cited.

The defendants claimed a variance, as the declaration stated that the erroneous credits arose in the performance of a contract entered into between the parties on or about August 23, 1920, and the evidence showed a series of separate sales. The master in his report stated that if that fact was a fatal variance his finding would be for the defendants on this count.

■■ It is not of material importance. The bill of particulars sets forth facts showing erroneous credits in the course of certain transactions which covers well enough the facts as proved. But it is immaterial whether there was a contract or that one was alleged. The rules of Civil Procedure provide that no technical forms of pleading are necessary and that all pleadings shall be construed so as to do substantial justice. Even after judgment pleadings may be amended to conform with the evidence. Rules 8 and 15, Rules of Civil Procedure.

■ The defendants make the further objection to the verdict that the erroneous payments were voluntary and made solely through the errors of a government agent (which was the finding of the master), and argue that when a payer acting upon his own information voluntarily makes a payment under a mistake of fact he may not recover it back from the payee. The master states in his report that if that theory is correct and applicable to this case his finding would be for the defendants.

■ No such theory is applicable here. Persons receiving payments illegally made by a government disbursing officer are liable to refund them.

It was said in this circuit in United States v. Saunders, 1 Cir., 79 F. 407, 408, that

"Whatever doubt may have existed under the earlier decisions of the supreme court as to the general right of the United States to recover moneys paid by the errors of their disbursing officers, as much where the

error is one of law as of fact, provided only the moneys belong to the United States ex æquo et bono, was removed by Wisconsin Cent. R. Co. v. United States, 164 U.S. 190, 212, 17 S.Ct. 45 [41 L.Ed. 399]." See also United States v. Kerr, C.C., 196 F. 503.

Judgment for the plaintiff on Count Two was properly rendered.

In Count Five the plaintiff claimed to recover $3,722.94 alleged to have been erroneously paid or credited the defendants in transactions involving the sale of a quantity of canned meats to the defendants through the War Department. The master reported an amount of $1,634.85 due the plaintiff, but the jury found the amount to be $3,722.94. On this count there was no evidence before the jury other than the master's report.

Objection to the verdict on this count is based on the alleged improper testimony before the master, which is made the subject of an alternative finding by him to the effect that if the testimony was objectionable the finding should be for the defendants.

A witness, Whittlesey, a government auditor, examined and analyzed the accounts of the defendants relating to the goods sold, made computations and testified as to the result. The master used this evidence as the basis of his finding of the amount due the plaintiff.

The testimony of Whittlesey before the master was seasonably objected to by the defendants because the documents and records which were the basis of Whittlesey's compilations and testimony were not all produced. The master in his supplemental report, after resubmission and the taking of further evidence, says that while he was satisfied that all of the Cabel records which could be found were produced, yet "Due to Major Denning's testimony I cannot say that I am satisfied that all of such records from the Finance Department files, if any, were so introduced. I am accordingly unable to state that all available records upon which Whittlesey based his compilation were in evidence. Under the circumstances the defendants duly objected to Whittlesey's being permitted to state that he had examined them all. If that statement was objectionable I must find for the defendants on this count inasmuch as it was a material factor in my finding for the plaintiff."

The testimony of experts in construing complicated accounts, such as those involved here, is permissible under some circumstances and often of great usefulness to the court and jury. Mr. Greenleaf in his work on evidence says:

"The testimony of experts upon the results appearing from account books which are in evidence is generally accepted as a valuable aid in the consideration of the accounts, and to that extent relaxation of the rules as to the best evidence is uniformly approved by the authorities." 1 Greenleaf on Evidence, Par. 93. Brown v. United States, 7 Cir., 142 F. 1, 5.

"Where complicated books of account are in evidence and elaborate computations are necessary to determine the results and the amounts evidenced by the books, the rule is well settled that an expert may be called upon to make such computations and state them to the jury." Osborne v. United States, 9 Cir., 17 F.2d 246, 249.

The above and similar cases have been cited to us by counsel for the plaintiff, but in no case that has come to our attention does it appear that such testimony has been admitted unless the books or documents which are the basis of the testimony of the expert witness have been produced in court and made available for purposes of cross examination. We can see no reason for any further relaxation of the rule as to the best evidence than as stated above, and it seems to be well settled that, at least, the production in court of the books or records which have been the subject of the examination by the expert witness is a prerequisite to the admission of his testimony construing them.

"While, under certain limitations, an expert may give a summary of his examination of voluminous records, if proper foundation has been laid with reference to such records so as to make them competent evidence, still to be admissible the records must at least be produced and be made available to the opposite party for the purpose of cross-examination. Ordinarily, the rule is one of convenience which goes no further than to permit a summary of the mass of records otherwise in evidence, or at least admissible in evidence and actually produced in court." Berthold-Jennings Lumber Co. v. St. Louis etc. Ry., 8 Cir., 80 F.2d 32, 44, 102 A.L.R. 688, and cases cited.

The rule is well settled to the same effect in Massachusetts. Boston & Worcester R.R. v. Dana, 1 Gray 83, 89. Cornell-Andrews & Co. v. Boston & Providence R.R., 215 Mass. 381, 390, 102 N.E. 625.

■ It seems clear that the testimony of the witness Whittlesey was based in part at least on his examination and analysis of records not produced at the hearing, and as the master in his report has stated that the finding should be for the defendants if such testimony was not proper, and as we consider the testimony of Whittlesey, in the absence of records from which he was testifying, to have been inadmissible in evidence and an insufficient basis upon which to found a judgment against the defendants, we conclude that the alternative finding should have been adopted and a verdict directed for the defendants on this count.

In Count Six the plaintiff claimed to recover $1,801.27 as erroneously paid defendants in transactions involving other sales of canned meats.

The master's report found nothing due the plaintiff, but the jury brought in a verdict of $1,405.21 for the plaintiff.

The defendants' objection to the verdict on this count is that there was no competent, credible evidence to support it.

There were four items, making up the sums of $1,801.27 claimed by the plaintiff under this count, being three small charges disallowed by both the master and the jury and the one in question of $1,405.21, which is referred to in the master's report as follows:

"The fourth item in count VI is the sum of $1,405.21 thereby bringing the total claimed under that count up to $1,801.27. According to the plaintiff's bill of particulars this was a reduction on canned meats which on November 15, 1921 were located at the 'Lowell Stores', a 'subpurchaser'. Whittlesey's testimony revealed that the Lowell Stores were the Cabel's branch at Lowell, Massachusetts. The letter of November 5, 1920 said 'customer's warehouse undisposed of'. There was no evidence before me as to just what this branch was. Inasmuch as the evidence indicated that the Cabels were wholesalers and Captain Higgins, acting under instructions to make physical inventory of goods in customers' warehouses, sent inspectors to Lowell, I conclude that this was a warehouse. Accordingly since these goods were there on November 15, 1920 and since I am of the opinion that the letter of November 5, 1920 was effective, I find that this reduction in price was also properly allowed."

The letter of November 5, 1920, referred to above, the pertinent parts of which were incorporated in the master's report, was a letter from the War Department to its Boston agency giving directions for determining discounts which had been allowed to purchasers of canned meats under certain conditions, the clause in the letter referred to in the master's report being as follows:

"In order to determine the difference due customer, you are directed to ascertain as of November 13, 1920, from the large purchases of canned meats from your control depot, preferably by physical inventory, or by affidavits submitted by the customer, the amount of each class and size of canned meats purchased from you remaining in their warehouses undisposed of."

The master, assuming from the circumstances mentioned in his report quoted above, that the Cabel store in Lowell was a wholesale warehouse, held that the Cabels were entitled to the warehouse discount, which the Government was seeking to recover as improperly allowed, and found for the defendants.

At the trial before the jury the plaintiff, having offered the master's report, called one witness, the defendant Robert Cabel, who testified that the Cabel store in Lowell was a retail store rather than a wholesale warehouse. There was no other evidence before the jury. The defendants take the position that the conclusion of the master that the discount had been properly allowed the defendants and his general finding that nothing was due from them to the plaintiff was conclusive as against the testimony of the witness Cabel and should not be affected by it.

■ It is true, as argued for the defendants, that under the Rules of Civil Procedure and under the practice in Massachusetts the report of a master making a simple finding in favor of one party, without reporting the evidence, in the absence of other evidence at the trial on the issue before the court, requires judgment in accordance with the master's finding. The report is prima facie evidence and the case does not stand as it would upon the uncontradictory testimony of witnesses which may be disbelieved. Lovell v. Commonwealth Thread Co., Inc., 1932, 280 Mass. 243, 246, 182 N.E. 364; Wakefield v. American Surety Co., 1911, 209 Mass. 173, 176, 95 N.E. 350; Scott v. Lieberman, 1933, 284 Mass. 325, 327, 187 N.E. 629; Knapp v. Amero, 1937, 298 Mass. 517, 11 N.E.2d 467, 470, Conte v. Mizzoni, 1937, 298 Mass. 463, 11 N.E.2d 496.

This, however, is not a case for the application of the rule urged by the defendants. The master's report was not a simple finding of nothing due the plaintiff. It was in substance a finding that nothing was due if the master was correct in assuming from certain circumstances (not from evidence before him on that point) that the Lowell store was a warehouse,—and only on that assumption.

The jury could find from the master's report and the supplemental evidence that the War Department had authorized a certain discount on goods in warehouses; that a discount of $1,405.21 was allowed and credited the defendants by agents of the Government in the belief that the goods, the subject of the discount, were stored in a warehouse; that as a matter of fact, contrary to the assumption of the master (he having no evidence on that point), the goods were not in a warehouse and therefore not subject to the discount, which had been erroneously credited.

Under the circumstances, the objection of the defendants that there was not sufficient evidence to support the verdict and judgment on the sixth count must be overruled.

The judgment of the District Court as to the second and sixth counts is affirmed. That portion of the judgment relating to the fifth count is vacated, the verdict is set aside and the case is remanded to that court with directions to enter judgment for the defendants as to the fifth count. Neither party recovers costs of appeal.