C. I. T. Corporation *v.* Correro.

(In Banc. March 9, 1942.)

[6 So. (2d) 588. No. 34826.]

**R. A. Jordan** and **Porter Peteet**, both of Greenwood, and **William A. Goodman** and **C. Rudolph Johnson**, both of Memphis, Tenn., for appellant.

**W. H. Montjoy** and **Alfred Stoner,** both of Greenwood, for appellee.

Argued orally by **R. A. Jordan**, for appellant, and by **Alfred Stoner**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an action for slander brought by the appellee against the appellant. The declaration contains two counts. At the close of the evidence the appellant requested but was refused an instruction charging the jury to find for it on the first count, and another to find for it on the second. The court then directed the jury to return a verdict for the appellee after assessing his damages, and there was a verdict and judgment accordingly.

The first count of the declaration charges that Abrams, an agent of the appellant, said of and to the appellee, "You know you all are holding stolen property," and in answer to the following inquiry then made of him by the appellee, "You mean I was an honest man until I went into the appliance business, and now I am a crook?" replied, "You are right."

The second count charged that Abrams said to another, "That's what we get for dealing with a couple of thieves." The statements in both counts were alleged to have been made while Abrams was about the appellant's business.

The evidence discloses in substance the following: The appellee and his brother, Toney Correro, were engaged, under the name of Dixie Refrigeration Engineering Company, in the business of selling electrical appliances, particularly refrigerators, at retail in Greenwood, Mississippi, Toney being the manager thereof. They would sell refrigerators by written contract on deferred payments, taking notes therefor and retaining the title thereto until all of these notes were paid. These contracts and notes would be sold by the Correros to the appellant, which was doing business in Memphis, Tennessee, and which thereafter collected the payments due thereon. On the failure of any purchaser to pay for the refrigerator purchased by him, the appellant would take possession of it and either sell it under the provisions of the contract or store it with the Correros at their place of business in Green-

wood, who would hold it subject to the appellant's order.

When the matters hereinafter to be stated occurred, the Correros had in their possession and were supposed to have at their place of business several such refrigerators that had been repossessed by the appellant.

An agent of the appellant would at intervals visit the Correros and check the number of the appellant's refrigerators then in their possesion. A dispute arose between the appellant and the Correros in which the latter claimed that the appellant owed it several hundred dollars on the notes of their customers sold by them to the appellant, but which the appellant denied. While this controversy was unsettled, Shelton, an agent of the appellant, visited the Correros for the purpose of checking the refrigerators then in their possession. He discovered that no refrigerators belonging to the appellant were at the Correros' place of business and on inquiring of Toney Correro where they were, obtained no satisfactory information relative thereto. The fact was that the refrigerators had been removed by the Correros from their place of business and stored elsewhere, but where they refused to disclose to Shelton, who then telephoned this information to the appellant at Memphis, resulting in Abrams, another agent of the appellant, going to Greenwood to Shelton's assistance. They called on Phillip Correro at a place other than where the refrigerator business was conducted, and were informed by him that he knew nothing of the matter as it was attended to by his brother Toney. By appointment Abrams, Shelton and the two Correros met at the Correro place of business the next night. This place consisted of a room considerably longer than it was wide, with an office about half way its length enclosed with beaverboard extending some distance up with lattice from there up, but not to the ceiling. There was one door from this office into the main room. Just before the conference began in this office an employee of Correro named Terney was requested by Abrams to leave the office. This he did, and according to Abrams and Shelton the door of the

office was then closed. But according to the evidence for the Correros it was left open. Without the knowledge of Abrams or Shelton Terney remained in the main room just outside of the office, as also did Sam Correro, a brother of Phillip and Toney. Both of them said they heard words alleged to have been spoken by Abrams on which the first count of this declaration is predicated. This conference lasted for quite a while but ended where it began. In the course of it, and after he had failed to induce the Correros to disclose where they had stored the refrigerators, Abrams, according to Phillip and Toney, said to them, "You all know you are holding stolen merchandise." According to Terney and Sam Correro, he said, "Do you know you are holding stolen merchandise?" Then, according to all of the appellee's witnesses, "Phillip jumped up and said, 'Do you mean to tell me I was an honest man before I went into the appliance business and now I am a crook?'" And Abrams replied, 'That is right.'" According to Abrams and Shelton, Abrams' reply was, "If you want to take it that way, it is all right with me." According to the appellee's evidence Abrams was mad and spoke in a loud tone of voice, both of which were negatived by the appellant's evidence. The reason given by the Correros for refusing to tell Abrams or Shelton where they had stored the refrigerators was that they intended to hold them as security for the money they claimed the appellant owed them.

The Correros, without the knowledge of Abrams or Shelton, had placed a recording machine where a record would be made of this conversation. The next morning Toney showed them a record on which he said the conversation of the night before was recorded. On being asked while on the witness stand, "For what reason did you have this recording device?" he replied, "I knew when they came down this time they were going to be as mad as the dickens, and I expected them to use some language which they had been accustomed to using on several other occasions." He further said that the

machine failed to record the conversation so that it could be reproduced from the record.

These statements by Abrams were made on a privilege occasion while he, as the appellant's agent, was trying to adjust a business controversy between it and the appellee. The first did not exceed the privilege, and the making of the second was invited, and therefore authorized, by the appellee. One cannot invite another to make a statement concerning him and when his request is complied with claim that he was slandered thereby, unless it appears that the privilege extended by the invitation was abused and made the occasion of maliciously publishing matter defamatory of the one extending the invitation. That "a plaintiff is not to be allowed to entrap people into making statements to him on which he can take proceedings," requires no supporting authority, but if desired it may be found in Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 166 So. 335; Odgers on Libel and Slander (5 Ed.), 294; 23 Am. Jur. (Libel and Slander), Sec. 129; and 36 C. J. (Libel and Slander), Sec. 215; Note to Chistopher v. Akin, 46 L. R. A. (N. S.) 104. The appellee should not have been permitted to recover on the first count of his declaration.

The appellee's evidence in support of the second count of his declaration was given by Rogers, a former employee of the Correros, who said that Abrams and Shelton called on him at his residence and asked him if he could assist them in locating the refrigerators, and during the conversation relative thereto Abrams said to him, "That is what we get for financing a couple of thieves." According to the evidence for the appellant what Abrams then said was, "That is what we get by dealing with a couple of crooks." In order for the appellee to recover on this count the jury must have believed that Abrams used the identical or synonymous words alleged in the appellee's declaration. "It is not sufficient that the same general idea is conveyed." Jones v. Edwards, 57 Miss. 28; Baldwin Piano Co. v. Jones, 152 Miss. 254, 119 So. 182.

The words "thieves" and "crooks" are, of course, not identical and are not synonymous. All thieves probably are crooks, but all crooks are not necessarily thieves. If the jury accepted the appellant's version of the language used by Abrams, the appellee was not entitled to recover on this second count, and the jury should have been permitted to resolve this conflict in the evidence. The appellee's request for a directed verdict should not have been granted and the appellant's request for a directed verdict on the first count of the declaration should have been granted.