## WATSON v. CANNON SHOE CO.

### No. 12095.

Circuit Court of Appeals, Fifth Circuit.

Jan. 6, 1948.

Ross R. Barnett and Francis S. Bowling, both of Jackson, Miss., for appellant.

John Harvey Thompson and P. H. Eager, Jr., both of Jackson, Miss., and John H. Hessey, of Baltimore, Md., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

This is an action for slander. The complaint alleges that one J. B. Patterson, while acting for the defendant corporation, within the scope of his authority, falsely and maliciously accused the plaintiff in the presence of others of overcharging customers and defrauding defendant company.[1]

The defendant admitted that Patterson was its agent, servant and employee, acting within the scope of his authority, and by way of defense, interposed pleas of (1) the general issue, (2) qualified privilege, (3) the truth of the words, if spoken; and in an amended answer, (4) that Patterson did not have authority to discharge the plaintiff in the manner alleged on the occasion in question.

The evidence shows that the plaintiff, a man about forty years of age, had been employed by the defendant shoe company for a number of years, and had worked his way up to the position of manager of the Company's shoe store in Mobile, Alabama, at the time the alleged slander occurred. Patterson was District Manager for the Company, his territory covering all of Florida, and extending into sections of Georgia, Alabama, Mississippi, and Louisiana. He had full charge of some nineteen stores in his district, with regard to general up-keep, shoe sales, and the hiring and firing of personnel. Patterson testified that he had relieved plaintiff from his position as manager of the Mobile store in accordance with instructions received from the Sales Manager of the Company's home office in Baltimore, Maryland, to the effect that plaintiff should be discharged for having involved the company in certain garnishment and attachment proceedings brought against him by the International Shoe Company. Patterson denied having made any of the alleged slanderous remarks concerning the plaintiff on the occasion in question, and testified that he gave plaintiff notice of his discharge privately. However, three witnesses, employees of the company's Mobile store at the time, substantially corroborated plaintiff's version of the alleged slanderous incident, testifying that Patterson made the remarks previously adverted to of and concerning the plaintiff, and within the hearing of the employees and customers in the store. They further testified that Patterson later tried to get them to sign statements that they did not hear what occurred. The plaintiff, in addition to denying any overcharges, by himself or any of his clerks, testified that the OPA (Office of Price Administration) prices for each type of shoe were listed in large letters on each shelf on which that particular price shoe was kept, in plain view of all customers and personnel in the store; that these prices were checked regularly by the OPA authorities, and that it would have been extremely difficult, if not impossible, to overcharge anyone.

---

[1] "While working for the Cannon Shoe Company you have let their employees overcharge for shoes and you get a rake-off from this overcharge. You have been letting clerks overcharge and you have been splitting this overcharge with the clerks. I am going to check you out of this store and get it over with, and the reason I am letting you out is because you have been overcharging customers and taking the money for yourself. * * * I can't get that ——— checked out quick enough. I don't give a ——— what happens to him and I am going to see to it that he doesn't get employment with any reputable company. He ought to have enough money from those overcharges to last him a long time anyway."

Plaintiff further testified that after he was discharged he made a trip to the Company's home office in Baltimore, for the purpose of ascertaining the reasons for his discharge. He testified that he had conversations with Mr. Bryan, the vice-president, and two other company officials, with reference to his discharge; that Mr. Bryan was, in fact, the alter ego of the Company, with full authority to approve or disapprove the actions of all subordinate company officials, and that on the occasion of plaintiff's visit, Mr. Bryan ratified Patterson's alleged slanderous utterances made at Mobile concerning plaintiff, by virtue of the following language: "You have been overcharging, * * * Yes, you have, * * * You know you have, * * * I can not go over Mr. Nolan's and Mr. Patterson's head on that, because they have my backing on whatever they do."

The trial court excluded the above testimony on the ground that it constituted a material variance and did not conform to the pleadings, whereupon the plaintiff requested leave of the court to file an amendment to the complaint, setting forth the requisite allegations as to the alleged ratification. The court declined to permit the plaintiff to amend his complaint to meet the rulings on the evidence, on the ground that the amendment came too late, and stated, in substance, a new cause of action. Thereafter, the court overruled plaintiff's motion for a nonsuit, and granted a directed verdict for the defendant company.

■ The alleged slander occurred in Alabama, and the law of that state is controlling on the questions here involved. Alabama has long adhered to the minority rule, to the effect that a corporation may not be held liable for a slander uttered by one of its agents unless the slander was either authorized or ratified by the corporation. Luquire Insurance Co. v. Parker, 241 Ala. 621, 4 So.2d 259; National Life Insurance Co. v. Abernathy, 206 Ala. 26, 89 So. 725; Singer Mfg. Co. v. Taylor, 150 Ala. 574, 43 So. 210, 8 L.R.A., N.S., 929, 124 Am.St.Rep. 90.

■ When we come to measure our liberal rules of pleading with the rulings of the court on the evidence as to the alleged ratification at Baltimore, we are inclined to hold that such evidence was admissible under the complaint without amendment. Federal Rules of Civil Procedure, rule 8(a), 28 U.S.C.A. following section 723c; Sparks v. England, 8 Cir., 113 F.2d 579; Dioguardi v. Durning, 2 Cir., 139 F.2d 774; Louisiana Farmers' Protective Union v. Great A. & P. Tea Co., 8 Cir., 131 F.2d 419; De Loach v. Crowley's Inc., 5 Cir., 128 F.2d 378; Continental Collieries v. Shober, 3 Cir., 130 F.2d 631. However, we prefer to rest our decision on other rulings.

■ The proposed amendment to the complaint, offered by the plaintiff to meet the rulings of the court on the evidence, certainly did not come too late, and in nowise constituted a new cause of action; it merely related to the mode and manner of proof required to establish the slander. We have repeatedly held that amendments are allowable, even after judgment, in order that the pleadings may be made to conform to the proof. Cabel v. United States, 1 Cir., 113 F.2d 998, 1000; De Loach et al. v. Crowley's, Inc., 5 Cir., 128 F.2d 378, 380; Wall v. Brim, 5 Cir., 138 F.2d 478, 481; Pearl Assurance Co., Limited, v. First Liberty National Bank, 5 Cir., 140 F.2d 200, 202. Moreover, if it was permissible for the defendant to file an amended answer only five days before the case was tried, denying Patterson's authority to discharge the plaintiff in the manner alleged, and setting forth for the first time an entirely new defense by way of justification, it was certainly permissible to allow the amendment requested. It was, of course, within the sound discretion of the court to penalize plaintiff for any lack of diligence by taxing him with costs. The court could have also granted the defendant a continuance if desired, and if advised that defendant was not prepared to meet the issue as made by the new amendment. Federal Rules of Civil Procedure, rule 15(b), 28 U.S.C.A. following section 723c. We are of opinion, and so hold, that the trial court's refusal to allow an amendment, under Rule 15(b), was clearly erroneous. Pearl Assurance Co. v. First Liberty National Bank, 5 Cir., 140 F.2d 200; Wall v. Brim, 5 Cir., 138 F.2d 478; White v. Holland Furnace Co., Inc., D.C., 31 F.Supp. 32; Cabel v.

United States, 1 Cir., 113 F.2d 998. There can, of course, be no question that the excluded evidence would be readily admissible after the amendment is allowed.

We find no merit in appellee's contention that the alleged slanderous remarks, if made, enjoyed a qualified privilege, nor do we consider the authorities cited in support of this proposition in point here. It is obvious from the record that the alleged slander, if it occurred, was not invited or requested by the plaintiff. Moreover, there is no question of connivance or entrapment here, as in C. I. T. Corporation v. Correro, 192 Miss. 522, 6 So.2d 588. The plaintiff undoubtedly had the right to inquire why he was being discharged, and such inquiry may not be construed as inviting or provoking the alleged slander. Caramanto v. De Salvo, Orleans No. 8968; National Cash Register Co. v. Salling, 9 Cir., 173 F. 22; Press Publishing Co. v. Gillette, 2 Cir., 229 F. 108; Shryock v. S. P. Calkins & Co., 4 Cir., 248 F. 649. Appellee's further contention that the alleged conversation between the plaintiff and Mr. Bryan in the Baltimore home office was not competent evidence because it was a privileged communication, and publication was not shown, is also without merit. This evidence was not offered to show slander, nor was it competent for such purpose, but only to show ratification of the alleged slander which occurred in Mobile. There is no rule requiring publication in such instance.

The court first admitted testimony of the plaintiff's witnesses that Patterson, after uttering the alleged slander, tried to get them to sign statements that they did not hear what occurred. After it was revealed that the above incident was supposed to have occurred after this suit was filed, the court excluded this testimony, on the ground that such evidence was not relevant or admissible under the complaint. We think such testimony was clearly admissible, regardless of the time such incident was supposed to have occurred; it was certainly competent to show Patterson's bias or prejudice, and was evidence from which the jury could have inferred that the alleged slanderous remarks were made by Patterson, and that malice existed, if and when he made them. Louisville & Nashville R. Co. v. Martin, 240 Ala. 124, 198 So. 141; Adler v. Miller, 218 Ala. 674, 120 So. 153; Scott-Burr Stores Corp. v. Edgar, 181 Miss. 486, 177 So. 766.

The record shows that the court permitted plaintiff to treat Patterson as an adversary witness.[2] Manifestly, the above evidence was relevant and admissible as affecting the credibility of Patterson's testimony.

We consider it unnecessary to pass upon other questions presented, as they will probably not occur upon another trial.

For the reasons herein expressed the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

WALLER, Circuit Judge, concurs in the result.

---

[2] By the Court: " * * * I am permitting cross examination of this witness. I hold, under the Rule, that the plaintiff is entirely entitled to information under (Rule) 43, subdivision B."