## WINTON *v.* PATTERSON.*

(Division A. Nov. 12, 1928. Suggestion of Error Overruled ¡Dec. 10, 1928.)

[119 So. 161. No. 27218.]

*Corpus Juris-Cyc References: Libel and Slander, 36CJ, section 30, p. 1166, n. 50.

*A. M. Carothers,* for appellant.

*Creekmore & Creekmore, S. L. McLaurin* and *B. D. Newsom,* also for appellant.

*S. C. Mims, Jr.,* for appellee.

*Cowles Horton,* also for appellee.

Argued orally by *H. H. Creekmore* and *Wade Creekmore*, for appellant, and *Cowles Horton*, for appellee.

McGOWEN, J. The appellee, Patterson, filed his declaration in the circuit court of Grenada county against Winton, the appellant, alleging that Winton spoke the following words to the Imperial Motor Company and its officers and agents of the plaintiff, Patterson, saying that "he (defendant, D. K. Winton) held a mortgage on said Chevrolet motor car," and further stated that "he (defendant, D. K. Winton) had a right to either the car or the debt secured by said mortgage." The declaration alleged that the above statement was false, malicious, and untrue, and that the accusation was an insult calculated to lead to a breach of the peace. The declaration further alleged that said accusation of selling mortgaged property was an insult and calculated to breach the peace, and is actionable under section 1, Hemingway's 1927 Code; that the car was of greater value than twenty-five dollars; and that Winton, by the language above quoted, charged Patterson, the appellee, with a felony.

The declaration further charged that, as a result of the speaking of these words, he, the appellee, Patterson, was arrested in Louisiana and incarcerated in jail there, and then brought back to Mississippi as a criminal on the charge of selling mortgaged property, the charge be-

ing predicated upon the above statement; for all of which Patterson sued for ten thousand dollars damages.

The defendant, appellant here, pleaded the general issue, and also filed pleas to the effect that in January, 1927, the appellee, Patterson, sought to borrow five hundred dollars for the purpose of burying his parent, and that, for accommodation, he, defendant (Winton), made arrangements with the Grenada Bank to take the plaintiff, Patterson's note for five hundred dollars secured by deed of trust on his Chevrolet car. Patterson executed the note for five hundred dollars, and, at the same time, Winton executed his note for the same amount to protect the loan made by the bank to Patterson. Both notes and the trust deed were due July 5, 1927, and on that date Patterson paid one hundred and fifty dollars and interest on his note, and executed a new note for three hundred and fifty dollars due November 4, 1927. And that on July 5th, the day of its date, the bank transferred the renewed note of Patterson's to Winton, and, believing the original trust deed to be lost, the bank transferred and assigned said trust deed on the margin of the record. The plea further set forth that Winton spoke the words quoted in an honest, sincere belief that he owned the mortgage on the car; that the words spoken were without malice in an honest and sincere belief that plaintiff's debt was secured to him, and in an honest effort to collect an honest debt in a fair and legitimate way; that the words were not spoken with intent or in a manner to insult the plaintiff or lead to a breach of the peace; defendant further pleaded that the words were privileged.

The cause was submitted to a jury; verdict rendered for one thousand dollars, and judgment entered thereon. Defendant (Winton) entered a motion for a new trial, which was overruled, and he prosecutes an appeal here.

The facts necessary to state for a decision of the case are that Patterson was an employee of a corporation of which Winton was president and in active management;

that, in January, 1927, Patterson, the appellee here, desired a loan of the appellant, Winton, for five hundred dollars with which to pay the funeral expenses of his parent; and that Winton sent Patterson to the Grenada Bank, where Patterson executed his note for that sum with interest due July 5, 1927, secured by deed of trust on a certain Chevrolet sedan, on which date Patterson paid the interest and one hundred and fifty dollars of the principal, and executed a new note in renewal of the old one, which new note was transferred, by the Grenada Bank, to Winton, as well as the trust deed, by noting the assignment on the margin of the record thereof. Later, Patterson left the employ of the corporation, but before leaving, traded in the Chevrolet car to the Imperial Motor Company for a new car, and shortly thereafter moved to Louisiana, where he secured employment with a lumber concern. Some time in October, in the office of the Imperial Motor Company, in conversation with its manager, Winton (appellant here) used the words quoted in the declaration, in an ordinary business tone, apparently in an effort to adjust his claim with the Imperial Motor Company, and there was no conversation to the effect that Patterson had committed a felony, nor is there anything in the record that could conceivably be said to demonstrate malice on the part of the appellant, Winton, or to demonstrate anything other than a desire on his part to collect his money on what he believed to be his claim against the car because of the mortgage thereon, which had been transferred to him. There was a stranger standing by who heard the conversation. The words were not uttered in an insulting manner, nor was it discussed between them, according to this record. Some time later, the Imperial Motor Company caused its agent to examine the record, and, finding that there was a mortgage on the car which had been transferred to Winton by the Grenada Bank, thereupon caused to be made an affidavit before a justice of the peace charging Patter-

son with the crime of selling mortgaged property without revealing the mortgage to the purchasers. On a telegram from the sheriff of Grenada county, Patterson was arrested in Louisiana in the presence of a number of employees, was incarcerated in jail, remaining there several days, and was then brought back to Grenada, or came back there with the sheriff without requisition, appeared before the justice of the peace, told him that he had the mortgage in his possession if he could get to his former home, drove out to his home in company with others, brought back the original mortgage, and the justice of the peace discharged him without any formal trial. Winton was not present in court and did not testify as a witness. Winton gave the Imperial Motor Company some information as to the whereabouts of Patterson after the utterance of the words quoted, *supra*. Winton said on the stand that he never made any apology for the utterance of the words. It was shown that the balance due on the notes had never been paid to Winton, and the cashier of the Grenada Bank testified that it was not their intention to release the trust deed, and that they did not do so. Patterson testified that Winton delivered to him the trust deed, in Winton's office, saying, "Here are your papers," which were the note for five hundred dollars and the original trust deed. Winton stoutly denied this.

Winton, appellant here, objected to the evidence as to the affidavit, the prosecution, and Patterson's incarceration in jail, and moved to exclude all evidence when the plaintiff closed, and also at the conclusion of the testimony, asking for a peremptory instruction, which was refused by the court.

The evidence showed liability on the part of Patterson to Winton. The motion to exclude was, in substance, to the effect: That the language attributable to Winton did not charge crime of any sort, nor impute to Patterson any dishonesty or baseness of character. The language

was not insulting, and the words did not tend to lead to a breach of the peace. That no special damages were shown. The arrest and prosecution were not directly and proximately caused by the words spoken.

1. The assignments of error which we deem necessary to notice are that the words spoken were not actionable words because they were not intended to insult, nor lead to a breach of the peace.

2. That Winton had the right to speak the words in the transaction of his business, and in the collection of his debt, not having spoken them in an insulting manner, nor in any manner calculated to lead to a breach of the peace.

3. That the court should not have permitted Patterson to show his subsequent arrest, incarceration, and prosecution by the agents and officers of the Imperial Motor Company, for the reason that the words spoken could not be held to have proximately caused said arrest and prosecution.

We shall refer to only one of the three serious grounds upon which the appellant seeks a reversal, to-wit:

"'That Winton had the right to speak the words in the transaction of his business, and in the collection of his debt, not having spoken them in an insulting manner, nor in any manner calculated to lead to a breach of the peace, but in the transaction of business, *and that the words complained of were privileged.*''

Section 1, Hemingway's 1927 Code (section 10, Code of 1906), is as follows:

"All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials, as in other cases."

The case at bar is bottomed on this statute, which, in its substantial form, was first passed by the legislature of 1822, and is known as the "Anti-Duelling Statute," and the main purpose of the statute is to furnish a remedy at law to one of whom insulting words are spoken, calculated to lead to a breach of the peace. The aim of the statute is to prevent personal difficulties for and on account of insulting language spoken by one person of another; to prevent duels and personal difficulties and the use of force and violence. The truth or falsity of the language is not an issue involved, but the truth of the language used may be pleaded and offered in evidence only in mitigation of the damages, for, surely, if insulting language used be true, then the theory of the law is that there would not be as much damages to a person as in a case where the language uttered was false. *Crawford* v. *Mellton*, 12 Smedes & M. 328, and *McLean* v. *Warring* (Miss.), 13 So. 236.

The language used in this case was not actionable, *per se*. The record shows that Winton uttered this language in a business conversation, while honestly seeking to collect his debt, which Patterson admitted he had never paid, but, for some unexplained reason, in answer to a question, he testified he did not owe the three-hundred and-fifty-dollar note, but said he had never paid it to Winton or to anybody else, and also stated that, when he gave the three-hundred-and-fifty-dollar note in renewal of the balance due on the original five-hundred-dollar note, on the day following, Winton handed him the original note and trust deed, with the remark: "Here are your papers." Patterson does not contend there was ever any agreement between him and Winton, or the Grenada Bank, that the trust deed was to be canceled or released. The trust deed in question contained the usual clause that it secured any amount then due or to become due by the maker.

It stands undisputed in this record that Winton, the appellant here, was undertaking to see that the note was paid, and that he had accommodated his employee, Patterson, by arranging at the bank and putting up his own credit to obtain money to pay the funeral expenses of the employee's mother. Both Winton and the motor company were financially interested in the car. At the time of the conversation, the note was not quite due. Patterson had left the employ of the corporation of which Winton was president; his whereabouts were to the motor company and Winton, unknown, and the only evidence offered tending to show malice in this transaction was the fact that after the conversation Winton found out Patterson's whereabouts from a Mrs. Goza, and informed the Imperial Motor Company thereof.

For aught that appears in this record, Patterson owed the money, and the trust deed secured the payment thereof, and the mere fact that the original trust deed had been delivered to him, without any agreement that it was to be canceled, of itself alone, did not operate as a release or cancel the security stipulated in the instrument. It is true that the statute provides that "a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained." It is also true that Judge MAYES, in the case of *Davis* v. *Woods*, 95 Miss. 432, 48 So. 961, in speaking of this statute, said:

"Under this statute the jury judge, not only of the amount of the damages sustained, but they are also the judges of whether or not the words used were insulting and calculated to lead to a breach of the peace—in other words, whether the words were actionable, and under the allegations of the declaration it was beyond the power of the court to take away from the jury the consideration of these questions."

In the case there under consideration, the declaration aptly alleged that the words Woods said to Davis were,

"What in the God damn hell are these infernal lies you have been circulating on me?" and aptly charged a violation of this statute. However, in that case this court recognized that where no malice was shown, and a right to speak was shown, this statute could not be invoked, and specially differentiated the case then under review from the case of *Dedeaux* v. *King,* 92 Miss. 38, 45 So. 466, wherein a convict presented himself to the election manager to vote, and, a convict not being entitled to suffrage, the election manager said to the convict: "You cannot vote because you are a convict; I say you are a convict, and convicts cannot vote here." In other words, this court held in the later case that one who, without malice, speaks of another, while engaged in the performance of a duty, using words which, otherwise, would be actionable, cannot be held liable in damages for speaking that which is in his discharge of duty.

It certainly cannot be conclusive, nor can it be the law, that one who, in good faith, in an effort to collect a debt, makes the claim to another in possession of property that he has a mortgage on the property then in the hands of that person, is liable in damages, if that is the basis for making the claim. To so hold would mean that anybody so situated could not settle his claim *en pais,* but, in order to avail himself of the right to speak, he must institute litigation and appear as a witness to be privileged to make a statement. Such is not, and cannot be, the law.

We do not think that a creditor is liable who sets about to look for the security for his debt in a business way, where there is no resort to violent or intemperate language, or anything in manner or language to indicate a desire to insult any one, as appears in this case. And, where one has asserted a mere legal right, in a regular tone of voice, and the language used does not, of itself, impute an infamous crime to the party against whom it is uttered, he is simply asserting a right which he must,

in law, be permitted to do, and cannot be mulcted in damages unless there is evidence tending to show that the declarant used words insulting in their nature in such manner as to show a motive to degrade, humiliate or insult rather than to assert his supposed legal right. *Davis* v. *Woods, Dedeaux* v. *King, supra,* and *Grantham* v. *Wilkes,* 135 Miss. 777, 100 So. 673. The declaration in this case charged malice, but we are firmly convinced that malice is not established, and the language used was apparently necessary in order that the declarant might carry forward his own business and protect his own rights. On his own view of the case, he had a right to claim that he had a mortgage on the car. The record does not disclose any lack of good faith on his part.

The appellee was not entitled to recover.

Reversed, and judgment here for the appellant.

*Reversed.*