COOPER *v.* DAVIDSON.

(Division. A.   Jan. 7, 1935.)

[157 So. 418.   No. 31473.]

Johnson & White and **A. M. Pepper,** all of Lexington, for appellant.

**J. B. Hutton, Jr.,** of Jackson, for appellant.

E. T. Neilson and S. R. King, both of Lexington, for appellee.

Argued orally by **H. H. Johnson** and **J. B. Hutton, Jr.,** for appellant and by **S. R. King** and **E. T. Neilson,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an action by the appellee for slander under the actionable words statute, section 11, Code 1930, reading: "All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials, as in other cases."

The amended declaration's allegation of the words spoken to the appellee is as follows: " 'I didn't rent you this house.' Whereupon the said plaintiff replied to

the said defendant, 'Why, you certainly did, this was the only house I asked you for and you gave me the key to it.' And then and there the said defendant replied and spoke of and to this plaintiff the following words, in an angry, loud, insolent and insulting voice and manner, to-wit: 'I did not, I rented you another house and this house wasn't mentioned. You got into this house with a skeleton key, you've got to get out.' ''

The circumstances under which the words were spoken are, in substance, as follows: The appellant is the president of the Bank of Durant and secretary and treasurer of a building and loan association, each of which owned houses it desired to rent, and of which the appellant had the keys. He had authority to rent houses owned by the bank, but not those owned by the building and loan association.

On one occasion, the appellee came into the appellant's office at the bank and stated that she desired to rent a house. According to the appellee's evidence, the house desired by her was the Beall house. According to the appellant's evidence, it was the Streatman house. The Beall house was owned by the building and loan association, and the Streatman house was owned by the bank. They agreed on the rental, and the appellant gave her a door key which the appellee says she thereafter used in entering the Beall house.

It is reasonably clear from the evidence that the appellant thought he was renting the appellee the Streatman house, while the appellee thought she was renting the Beall house.

According to the appellant, he had lost the key to the Streatman house, and was using a skeleton key in place thereof, that is, a key so filed that it would unlock any lock of a certain type, and that was the key he gave to the appellee.

According to the appellee, the key given her was not a skeleton key, and the one she says was given her and

which she used fitted the lock on the front door of the Beall house, but not that of the Streatman house.

Shortly after the appellee rented the house from him, the appellant discovered that the appellee was occupying the Beall house, whereupon, he went to that house and was met at the door by the appellee, and, according to her, a conversation took place as set forth above, during which the appellant spoke in a loud voice and in a rude and angry manner.

This discourtesy was denied by the appellant, who says that he did not use, or does not remember to have used, the words, "You got into the house with a skeleton key," but what was said on the occasion in question was this: "I said, 'Miss Julia, you are in the wrong house. This house belongs to the Building and Loan Association, I rented you the house belonging to the Bank.' She said, 'You didn't. This is the house you rented me,' and I said, 'I didn't, I don't rent the Building and Loan houses.' . . . She got excited and I said, 'Oh, well,' and turned around and left."

The court below refused a request of the appellant for a directed verdict and charged the jury to return a verdict for the appellee if they believed, from the evidence, that the words spoken by the appellant are, according to their usual construction, meaning, and acceptation, considered as insults, and calculated, or likely, to lead to a breach of the peace.

To apply the statute literally, the use of any words, without reference to the occasion or purpose of their use, which, from their usual construction and acceptation, are considered as insults and calculated to lead to a breach of the peace, would be actionable. To so construe the statute would reduce it to an absurdity and prevent one from using words of the character condemned by the statute when necessary to be used in asserting or defending, in good faith, a claimed right or duty. This court has uniformly declined to so con-

strue the statute. The circumstances under which the words were used must appear. Warren v. Norman, Walk. 387. And, if the occasion is such as to render it necessary or proper for the use of the words, they are not actionable, if used in good faith and without any intention to insult. Verner v. Verner, 64 Miss. 321, 1 So. 479; Dedeaux v. King, 92 Miss. 38, 45 So. 466; Winton v. Patterson, 152 Miss. 158, 119 So. 161; and Chaffin v. Lynch, 83 Va. 106, 1 S. E. 803; Id., 84 Va. 884, 6 S. E. 474.

The evidence, as hereinbefore said, clearly discloses a mutual mistake as to which house the appellee had rented from the appellant, and that the appellee had taken possession of the Beall house under the impression that it was the house rented by her. The appellant had the right to insist upon his version of the controversy, Winton v. Patterson, supra, and to notify the appellee that she must vacate the Beall house. Whether she should obey this direction depended, of course, upon whether or not her version was correct.

The only words used by the appellant, assuming for the purpose of the argument that he did use them, were, "You got into this house with a skeleton key," which the appellee says, in effect, charged her with entering the house surreptitiously, knowing that she had no right to do so.

Assuming that the words are susceptible of that construction, nevertheless, the appellant had the right to use them, provided he did so in good faith and without intention to insult. If the appellee did, in fact, enter the house surreptitiously, the appellant had the right to so say. So, likewise, if he, in good faith, believed such to be the fact.

It is clear from the evidence that the appellant thought he had given the appellee a skeleton key, and, viewed in that light, the words, if used, must have been intended to convey the idea that the key he gave the appellee and

with which she entered the house was a skeleton key. Certainly, if the appellant had said, "I did not, the key I gave you and with which you got into the house was a skeleton key," the words would have contained no suggestion of an insult, and such, in effect, as hereinbefore said, was the meaning of the words used.

It is true that the appellant's manner in using the words is to be taken into consideration, but the statute was not intended to prevent persons from becoming angry when attempting to settle their business and social controversies. It is also true that words, innocent in themselves, may become insulting when used in such a manner as to indicate that an insult was thereby intended, but such cannot be said to be the case here. At most, the evidence discloses a mutual altercation in which the appellant, according to the appellee, was guilty of the impropriety of becoming angry, but words, otherwise unexceptionable, do not become actionable merely because spoken in anger.

The words of the statute, "A plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon," do not abolish the rule of privilege, and, when it is clear that the privilege has not been exceeded, the court should so say. Authorities, supra.

The appellant's request for a directed verdict should have been granted.

Reversed, and judgment here for the appellant.