# HUCKABEE *v.* NASH.

(Division A.   Oct. 3, 1938.)

[183 So. 500.   No. 33168.]

**Adams & Long**, of Tupelo, for appellant.

Geo. T. and Chas. S. Mitchell, of Tupelo, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellant, Huckabee, sued appellee, Nash for damages, his declaration being in two counts. In the first count a liability for damages was charged against appellee by virtue of Section 11 of the Code of 1930. By the second count it was alleged that appellee was liable for damages to appellant for an assault by pointing a dangerous weapon in the face of appellant and threatening to kill him. To the declaration the appellee filed a plea of the general issue and notice of special matter thereunder. After the cause was submitted to a jury, it returned a general verdict in favor of the appellee and the judgment was entered accordingly, from which appeal is prosecuted here.

The essential facts are these: Nash came into the store in which Huckabee was employed and complained

about the weight of a chicken which had been sold by
Huckabee to the porter of Nash. According to Hucka-
bee and his witnesses, Nash was angry and in the course
of the argument Nash drew a pistol and pointed it at
Huckabee and said to him: "You God damned s——
of a b——," whereupon Huckabee invited Nash to go in-
to the back room and they would settle the matter.

The appellee's version of the facts was that Nash had
gone into the store to complain about short weight on a
chicken, which Huckabee had sold to his porter for him,
and had delivered a chicken of less weight than that for
which he was charged; that as the argument proceeded,
and in response to Nash's statement that the chicken
did not weigh as much as charged for, Huckabee grew
angry and said to Nash, "You God damned s—— of a
b—— you come back into the back room and we will
settle it," to which Nash responded in the same lan-
guage with the addition, "I will go with you anywhere
to settle it," and that as they were proceeding to the
rear with Huckabee in the lead, the latter reached in on
his counter and drew a boning knife and rushed at Nash
with the knife, and then Nash drew his pistol and or-
dered Huckabee to drop the knife. Huckabee dropped
the knife, and Nash put his pistol back in his pocket and
walked out.

The testimony of the parties to this controversy was
supported by other witnesses.

The main contention presented by appellant on the
appeal here is that the court below erred in granting to
appellee the following instruction: "The Court instructs
the jury for defendant that even though you may be-
lieve from the evidence that defendant, Dr. N. L. Nash,
called plaintiff, William Huckabee, a son of a bitch, yet
if you further believe from the evidence that immediate-
ly before this, the said Huckabee had called Dr. Nash a
son of a bitch, and that Dr. Nash called Huckabee a son
of a bitch on the impulse of the moment and in the heat
of passion, and in retaliation for what Huckabee had

called him, then you will find your verdict for defendant on the first count of the declaration.''

It will be noted that this instruction authorized the jury if it believed the version of Nash that Huckabee first applied to him the opprobrious epithet and that he then, in response to the insult, applied to Huckabee the same opprobrious language, then, in that event, the jury will accept the version of Nash of the facts as a complete defense to the action.

It is the precise contention of appellant that under Section 11 of the Code of 1930 even though the jury might find that appellant offered the first insult to the appellee, that fact could not relieve appellee of liability to appellant, Nash having admitted that he spoke the words during the altercation, and that if it be true that Nash spoke the words after practically the same opprobrious epithet had been applied to him that it could be received and treated by the jury only in mitigation of damages. That the language of the statute prohibits the defense here interposed and recognized by the instruction of the Court. Section 11 is as follows: ''Certain words actionable—All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials, as in other cases.''

Construing the statute literally only two things are necessary to bring the words spoken of another within the statute: First, they must be insulting from their usual construction and acceptation. Second, the words must be calculated to lead to a breach of the peace. See Scott v. Peebles, 2 Smedes & M. 546; Crawford v. Mellton, 12 Smedes & M. 328. The gravamen of the statute is the speaking of the words, whether true or false, in an insulting manner. Crawford v. Mellton, supra.

However, years ago this court determined that a literal construction of the statute would not be applied by this court.

In the case of Verner v. Verner, 64 Miss. 321, 1 So. 479, it was held in the statute that a witness in a judicial proceeding was immune from liability in an action brought under this statute, the court there saying, "it is inconceivable that the legislature intended, by the enactment of said section, to inflict a blow on 'justice and the cause of good government.' " In Dedeaux v. King, 92 Miss. 38, 45 So. 466, the court held that an election officer who spoke defamatory words in good faith in the discharge of his official duty, believing the words to be true, would not be liable under this statute, and this is true, although the truth of the insulting words is no defense. See Jefferson v. Bates, 152 Miss. 128, 118 So. 717; Recently in Cooper v. Davidson, 172 Miss. 74, 157 So. 418, the privilege was extended to words uttered in the course of a business transaction in good faith without any intention to insult. We said there with reference to the construction of this statute literally: "To so construe the statute would reduce it to an absurdity and prevent one from using words of the character condemned by the statute when necessary to be used in asserting or defending, in good faith, a claimed right or duty." Likewise, see Winton v. Patterson, 152 Miss. 158, 119 So. 161. Also, see, Davis v. Woods, 95 Miss. 432, 48 So. 961; Grantham v. Wilkes, 135 Miss. 777, 100 So. 673.

In the case at bar we have the situation where two men are engaged in a verbal combat, each applying opprobrious epithets to the other, and the appellant here demands damages under this statute although the jury has determined that he himself first applied the insulting epithet involved here to the appellee, and is bringing his action as it now confronts us upon the rejoinder of the appellee in practically the same language. To hold that A could insult B and when B, in the same al-

tercation at the same time, retorted by saying, "You are another," or repeating the identical language would in our opinion, render the statute unjust or oppressive and calculated to defeat all the good purposes intended by the statute.

This court held in the case of Canal Bank & Trust Company v. Brewer, 147 Miss. 885, 112 So. 552, 114 So. 127 as follows: "in construing statutes, however, the chief aim of the courts should be to reach the real intention of the Legislature. A construction which will bring about manifestly unthought-of and unjust results will be avoided, if possible, and, if necessary to avoid such results, the courts will widen or narrow the letter of the statute. Kennington v. Hemmingway, 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392. In the Kennington Case our court quoted, with approval, what was said by Lord Coleridge in Queen v. Clarence, L. R. 22 Q. B. Div. 65. In that case Lord Coleridge used the following language: 'In such a matter as the construction of a statute, if the apparent logical construction of its language leads to results which it is impossible to believe that those who framed or those who passed the statute contemplated, and from which one's own judgment recoils, there is in my opinion good reason for believing that the construction which leads to such results cannot be the true construction of the statute.' "

We cannot bring ourselves to the belief that a party may apply an opprobrious insult epithet to another, and when the latter at the same time replies by applying the same epithet to the complaining party that the former can successfully complain of that wrong which he himself provoked and brought about where the defamation made is bandied between them at the same time and place. We do not believe that the Legislature would have enacted a statute which permitted a plaintiff to call a defendant a thief and when the defendant then and there retorts, "You are a thief," that the first

spokesman can recover damages of the latter. We are confining the provocation to slanderous words spoken in violation of the statute in the same altercation. In other words, the mutual exchange of opprobrious epithets is involved in this case.

We, therefore, conclude that the court below did not err in granting the instruction complained of.

There is complaint of other instructions which we do not think call for comment here and do not constitute in this case reversible error.

Affirmed.