SALVO *v.* EDENS.

No. 41287 December 7, 1959 116 So. 2d 220

*Gwin & Kuehnle,* Natchez, for appellant.

*Wm. F. Riley, E. H. Fitzpatrick, Jr.,* Natchez, for appellee.

HOLMES, J.

This is an action for damages under the actionable words statute. The suit was filed by the appellee, Mrs. Florence Temple Edens, against the appellant, Emile W. Salvo, Jr., in the Circuit Court of Adams County. The appellee based her suit upon an alleged common law libel and upon Section 1059, Volume 1A Recompiled, Mississippi Code of 1942, commonly referred to as the actionable words statute. On the trial of the case the court gave a peremptory instruction for the appellant insofar as the action was based upon common law libel, and submitted the case to the jury under the actionable words statute. The jury returned a verdict for the appellee for $2500 and judgment was entered accordingly. The appellant appeals from that judgment. There is no cross-appeal from the action of the trial court in directing a verdict for the appellant insofar as recovery was sought for common law libel. Therefore, the case is

before us as one based upon the actionable words statute and we so consider the case on this appeal.

The pertinent evidence shows substantially the following: The parties are of the white race. The appellee is about 22 years of age. The appellant is a practicing dentist in the City of Natchez. On or about the early part or middle of June 1956, the appellee Mrs. Edens, called at the office of the appellant, Dr. Salvo, to consult him about the condition of her teeth. Dr. Salvo examined her teeth and ascertained that she had had no dental care and that all of her upper teeth, consisting of eight, were in such condition as that he advised their removal. He further advised that upon the removal of her eight upper teeth an upper denture be immediately applied. This advice was in accordance with the accepted method in the field of modern dentistry.

According to the testimony of Dr. Salvo, he told Mrs. Edens that the fee for his services would be $100, and that a deposit on the fee would be required. Mrs. Edens testified that he fixed his fee at $75. In any event, Mrs. Edens did not have the funds to make a deposit on Dr. Salvo's fee and said that she would come back later. Dr. Salvo then, although no deposit on his fee had been made, told Mrs. Edens that he would take an impression and make the upper denture and that upon her return he would extract the eight upper teeth and immediately apply the denture. This appeared to be satisfactory to Mrs. Edens, and the doctor took the impression and Mrs. Edens then left his office. She did not again return to the Doctor until April 1957.

In the meantime, Dr. Salvo, having taken the impression, had made the upper denture and upon Mrs. Edens' second appearance at his office in April 1957, he extracted her eight upper teeth and immediately applied the denture which he had in the meantime made. He told Mrs. Edens to look in the mirror and see how the

upper denture looked, and she did this and called the Doctor's attention, according to her testimony, to a crack in the front of the upper denture through which blood was oozing. The Doctor told her to go and come back again and she returned to her home. According to her testimony, she suffered all night as a result of the upper denture being applied, and the next morning she telephoned Dr. Salvo and told him of her pain and asked that he do something to relieve her. Mrs. Edens testified that the Doctor told her that if she didn't like the denture she could return it, and that if she wanted to go around with her bottom lip touching her nose that would be all right with him, if she was that kind of people, and he thought she was that kind of people. This telephone conversation was wholly denied by Dr. Salvo. Dr. Salvo testified that Mrs. Edens return-ed to his office thereafter on two or three occas-sions when he gave her treatment. According to Mrs. Edens, however, her husband went to the Doctor's office the next Monday after the telephone conversation to return the denture. Mr. Edens said that when he re-turned the denture he asked Dr. Salvo what his charges were and that Dr. Salvo said that his charges were $20. Mr. Edens further testified that he told the Doctor that he did not get paid off until the following Thursday and that he would bring the money at that time. It was further testified by Mr. and Mrs. Edens that on the same date Dr. Salvo wrote to Mrs. Edens the following letter:
"Mrs. B. D. Edens

Cemetery Road
Natchez, Miss.

Dear Mrs. Edens:

I sincerely regret that you are withour your denture, and your teeth. Had I suspected that you and your husband would have been satisfied with paupers' care I should have offered that to you. Had I also known

that you and your husband had no aversion to your running around toothless and thereby loosing permanently your, until now, somewhat pleasant facial contours, I should never have suggested immediate denture service for you.

''Your husband should not be blamed for his serious mistake but pitied for his understandable ignorance relative to dental care. (The seriousness of his mistake will only be fully realized at a later date).

''Since my generous offer of services (for such a negligible fee) has been so rudely declined I shall be moved nevertheless to overlook at this moment your rightful and legal indebtedness to me for denture-services as rendered to date. I shall mark it up as a profitable experience.

''However, a statement of my fee for examination, diagnosis, medication, local anesthesia, and extraction of your teeth is enclosed herewith. Under the circumstances I shall appreciate prompt settlement so that we both can forget the whole matter.

''Most sincerely yours,
''/s/ E. W. Salvo, D.D.S.

''encl. Statement of Fee: $30.00
''cc. Credit Assoc. Natchez Dental Society
''EWS:bb

Mrs. Edens said that this letter upset her, and made her nervous and tearful. Dr. Salvo testified that he wrote the letter in the hope of impressing upon Mrs. Edens the necessity of her using the upper denture and also for the purpose of prevailing upon Mrs. Edens to pay his fee. A notation on the bottom of the letter indicated that a copy thereof had been sent to the Credit Association, Natchez Dental Society, but Dr. Salvo said that although that notation appeared on the letter, a copy thereof was not sent to the Credit Association, Natchez Dental Society, and that he had put the notation on the letter in the hope it might result in the col-

lection of his fee. In October 1957, Dr. Salvo filed suit in the justice of the peace could against Mr. and Mrs. Edens seeking to recover a judgment for his fee in the sum of $100. On December 5, 1957, about a month after Dr. Salvo filed his suit in the justice of the peace court and about seven months after the date of the aforesaid letter, this suit was filed by Mrs. Edens against Dr. Salvo.

The basic question presented on this appeal is whether or not the words in the letter to the effect, "Had I known that you and your husband had no aversion to your running around toothless and thereby loosing permanently your, until now, somewhat pleasant facial contours," are, according to their usual construction and common acceptation, insulting and calculated to lead to a breach of the peace within the contemplation of Section 1059, Volume 1A Recompiled, Mississippi Code of 1942. This statute reads as follows:

"All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials as in other cases."

This statute has come before this Court for review on a number of occasions. It was originally enacted by the Legislature of 1822, and was commonly known as the "Anti-Duelling Statute," and as so enacted, read as follows: "All words, which, from their usual construction and common acceptation, are considered as insults, and lead to violence and breach of the peace, shall hereafter be actionable; and no plea, exception or demurrer shall be sustained in any court of this state to preclude a jury from passing thereon, who are hereby declared to be the sole judges of the damages sustained."

It will be noted that the only change in the statute as originally enacted by the Legislature in 1822 is that in the original statute, the same read, ''are considered as insults and lead to a breach of the peace,'' whereas in the present statute this language is changed to read, ''are considered as insults and *calculated to* lead to a breach of the peace.'' (Emphasis ours).

In Winton v. Patterson, 152 Miss. 158, 119 So. 161, the Court said: ''. . . the main purpose of the statute is to furnish a remedy at law to one of whom insulting words are spoken, calculated to lead to a breach of the peace. The aim of the statute is to prevent personal difficulties for and on account of insulting language spoken by one person of another; to prevent duels and personal difficulties and the use of force and violence. The truth or falsity of the language is not an issue involved, but the truth of the language used may be pleaded and offered in evidence only in mitigation of the damages, for, surely, if insulting language used be true, then the theory of the law is that there would not be as much damages to a person as in a case where the language uttered was false.''

In the case of Cooper v. Davison, 172 Miss. 74, 157 So. 418, the Court said: ''It is true that the appellant's manner in using the words is to be taken into consideration, but the statute was not intended to prevent persons from becoming angry when attempting to settle their business and social controversies. It is also true that words, innocent in themselves, may become insulting when used in such a manner as to indicate that an insult was thereby intended, but such cannot be said to be the case here. At most, the evidence discloses a mutual altercation in which the appellant, according to the appellee, was guilty of the impropriety of becoming angry, but words, otherwise unexceptionable, do not become actionable merely because spoken in anger.''

In Davis v. Woods, 95 Miss. 432, 48 So. 961, the Court said: ''Whether the words were such as are usually

considered insulting and calculated to lead to a breach of the peace is expressly required by the statute to be submitted to a jury.''

 ██ The appellant contends that the language in the letter complained of does not fall within the contemplation of the actionable words statute, and does not meet the tests required by the statute. These tests are, first, the words must be insulting from their usual construction and acceptation, and, second, the words must be calculated to lead to a breach of the peace. Huckabee v. Nash, 182 Miss. 754, 183 So. 500. The appellant contends, therefore, that his request for a peremptory instruction should have been granted. We think this contention is well founded.

 ██ We have carefully reviewed the testimony in this case and given due consideration to the language complained of and to the circumstances under which said language was used, and we have come to the conclusion that the words complained of are clearly not within the contemplation of the actionable words statute. It is probably true that the language complained of was written by the appellant in anger because he had been unable to get the appellee to make any payment on his fee for his services, ██ but words not within the contemplation of the statute do not become actionable because prompted by anger. Cooper v. Davidson, supra. To refer to one who has lost his teeth as toothless is not to impute to him anything of a degrading nature, or of a nature subjecting him to infamy, or scorn, or ridicule, but is merely to call attention to an existing condition. To point out such condition in another may cause embarrassment but it is not insulting and calculated to lead to a breach of the peace. Manifestly, the appellee did not consider the words as insulting and calculated to lead to a breach of the peace since she waited seven months after the complained of letter was written before taking action and bringing this suit, and

brought it then only after the appellant had sued her and her husband in the justice of the peace court for the recovery of his dental bill. Toothlessness is a misfortune but not a disgrace. While to comment on it to one's face may cause embarrassment and transcend the bounds of propriety and tact, such comment is not, in our opinion, of a nature insulting and calculated to lead to a breach of the peace. We are, therefore, of the opinion that the words complained of are not within the purview of the actionable words statute and that the trial court erred in denying to the appellant his request for a peremptory instruction. This conclusion renders it unnecessary that we deal with the other assignments of error. The judgment of the court below will therefore be reversed and judgment rendered here for the appellant.

Reversed and judgment here for appellant.

*Roberds, P. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.