215 So.2d 685 (1968)
Ellen Anthony TATTIS
v.
N.A. (Nick) KARTHANS and Alec Dennery.
No. 45046.
Supreme Court of Mississippi.
November 18, 1968.
Bernard W.N. Chill, Jackson, for appellant.
Dan M. Lee, Ray, Lee & Moore, Jackson, for appellees.
JONES, Justice.
This is a case filed in the Circuit Court of the First Judicial District of Hinds County, Mississippi, seeking to recover damages under the provisions of our "Actionable Word Statute." A demurrer to the declaration, on the ground "That the alleged statements contained in the amended declaration are not actionable under Section 1059 of the Mississippi Code of 1942, as amended," was sustained by the lower court and the case was brought here. The first part of Section 1059 reads as follows:
All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained * * *.
The declaration charged "That at or about midnight between October 15th and *686 16th, 1966, at Charlotte, North Carolina, defendant in the presence of a number of persons [* * * including among others, the appellee, Alec Dennery * * *] maliciously and with the intent to cause it to be believed that this plaintiff was an immoral and unfit person who used filthy and unbecoming language * * *" spoke certain words, and that the defendant Dennery thereafter published the said words by repeating to various persons what his co-defendant had said.
Although the declaration did not contain certain provisions of the statute above quoted, it was charged by the plaintiff that the action was brought under said statute; and it was so treated by the defendant and the court below. The lower court held a demurrer good, finding that the words were not actionable under said section.
Though the demurrer was filed as a special demurrer, we are treating it as a general demurrer and considering whether under the law said words, with the allegations of the declaration, are actionable under the Mississippi statute.
The statute itself provides that no demurrer shall be interposed to prevent the jury from passing upon the question as to whether said words are within the statute. The purpose of this statute and the reason for not permitting the court to construe the said words are stated in the case of Barger v. Hood, 87 W. Va. 78, 81, 82, 104 S.E. 280, 282 (1920), as follows:
None of the grounds of the demurrer urged to this declaration involve the construction of the language used, and it is urged that the inhibition of that statute only goes to the extent of denying the right of the court to construe the language, and not to the right of the court to entertain a demurrer for other reasons. In Poling v. Pickens, 70 W. Va. 117, 73 S.E. 251, Ann.Cas. 1913D, 995, a demurrer to the declaration in an action of this kind was under consideration, and it was held that it did not lie, but the ground of demurrer urged there was that the language used was not, according to its ordinary acceptation, insulting, and that decision is only authority for the principle that a demurrer may not be entertained for that reason. This statute was passed in aid of acts to prevent duelling, the argument being that language of an insulting character was often used under such circumstances that the law offered no redress, and because of this fact those insulted were inclined to resort to personal violence for satisfaction. The Legislature evidently contemplated that juries were better qualified to determine what language would be insulting to a gentleman's moral sensibilities than the judges who, because of their habits of thought, may acquire a more or less pachydermous disposition, and be likely to hold language which to others might seem violent or insulting as not insulting, or not likely to produce a breach of the peace. It cannot be doubted but that in the construction of such language the habits of thought and methods of life of those charged therewith play a large part, and the beneficent results accomplished by this legislation would seem to justify the confidence of the Legislature in the juries charged with the trial of such cases. It is argued that a jury might construe the mildest kind of language as insulting and tending to a breach of the peace, and the courts would have no power to correct their verdict upon that ground. A review of the cases which have arisen under this statute justifies the conclusion that the juries can be trusted to protect the rights of individuals in this regard, and whether this be true or not the Legislature undoubtedly has the power to place upon the jury this duty, instead of upon the court. The reason for the enactment of this statute makes it quite clear that it was the intention to limit the power of the court to entertain a demurrer only when that demurrer was based upon a construction of the language, and not when it is founded upon some such cause as misjoinder of parties, as is the case here.
*687 In actions brought under this statute, the court has the power to pass on a demurrer where the demurrer is not based upon a construction of the words but on some other ground evidenced by the declaration.
In Verner v. Verner, 64 Miss. 321, 1 So. 479 (1886), the declaration showed the defendant was a witness in a judicial proceeding and a demurrer was sustained on the ground of the immunity of a witness in a judicial proceeding from liability to such an action.
In Dedeaux v. King, 92 Miss. 38, 45 So. 466 (1907), the declaration stated the defendant was an election manager and that the words were spoken in the discharge of his duties. A demurrer was there sustained not on the construction of the words but because, in view of the defendant's official position, the declaration was fatally defective when it failed to charge malice; to negative the truth of the words spoken; or to show the words were not said in good faith. It was unnecessary in either of these cases to construe the words.
In Davis v. Woods, 95 Miss. 432, 437-438, 48 So. 961 (1909), this Court reversed a case where a demurrer to the declaration had been sustained, saying:
The declaration states a cause of action in the very words of the statute, and the court should have overruled the demurrer to the declaration. It is stated in the declaration what the words were, and it is further alleged that, from their usual construction and common acceptation, they were considered insulting and calculated to lead to a breach of the peace. Whether the words were such as are usually considered insulting and calculated to lead to a breach of the peace is expressly required by the statute to be submitted to a jury. Under this statute the jury judge, not only of the amount of the damages sustained, but they are also the judges of whether or not the words used were insulting and calculated to lead to a breach of the peace  in other words, whether the words were actionable, and under the allegations of the declaration it was beyond the power of the court to take away from the jury the consideration of these questions. Crawford v. Mellton, 12 Smedes & M. 328; Scott v. Peebles, 2 Smedes & M. 546. A cursory examination of the case of Dedeaux v. King, 92 Miss. 38, 45 So. 466, will readily differentiate the opinion in that case from any holding here. The words charged to have been said by King to Dedeaux were: "You cannot vote, because you are a convict. I say you are a convict, and convicts cannot vote here." It is to be remembered under our laws that a convict is deprived of the right of suffrage, and at the time King made this statement to Dedeaux he was acting as an election manager, charged with the duty of challenging every vote believed by him to be illegal. The court held in that case that the declaration was demurrable, because it did not allege that King used the words with malice, or that the statement of the election manager was not true. In other words, the declaration did not show that, although the words were spoken to Dedeaux as alleged, King was not acting in the lawful discharge of a duty required of him in making this statement. The case here presents quite a different question.
In Hodges v. Cunningham, 160 Miss. 576, 581, 135 So. 215, 217 (1931), the Court again held that:
Under section 11, Code of 1930, whether the words charged to have been spoken of the plaintiff are calculated to lead to a breach of the peace is for the determination of the jury.
The cases on which the appellees' rely are such as Cooper v. Davidson, 172 Miss. 74, 157 So. 418 (1935). This was a case where all of the evidence had been taken and it appeared, without doubt, that the words were spoken in a business deal and thus, under the evidence showing the surrounding *688 circumstances, the words could not be considered actionable.
In that case, the Court said:
To apply the statute literally, the use of any words, without reference to the occasion or purpose of their use, which, from their usual construction and acceptation, are considered as insults and calculated to lead to a breach of the peace, would be actionable. To so construe the statute would reduce it to an absurdity and prevent one from using words of the character condemned by the statute when necessary to be used in asserting or defending, in good faith, a claimed right or duty. This court has uniformly declined to so construe the statute. The circumstances under which the words were used must appear. Warren v. Norman, Walk, 387. And, if the occasion is such as to render it necessary or proper for the use of the words, they are not actionable, if used in good faith and without any intention to insult. Verner v. Verner, 64 Miss. 321, 1 So. 479; Dedeaux v. King, 92 Miss. 38, 45 So. 466; Winton v. Patterson, 152 Miss. 158, 119 So. 161; and Chaffin v. Lynch, 83 Va. 106, 1 S.E. 803; Id., 84 Va. 884, 6 S.E. 474.
The evidence, as hereinbefore said, clearly discloses a mutual mistake as to which house the appellee had rented from the appellant, and that the appellee had taken possession of the Beall house under the impression that it was the house rented by her. The appellant had the right to insist upon his version of the controversy, Winton v. Patterson, supra, and to notify the appellee that she must vacate the Beall house. Whether she should obey this direction depended, of course, upon whether or not her version was correct.
The only words used by the appellant, assuming for the purpose of the argument that he did use them, were, "You got into this house with a skeleton key," which the appellee says, in effect, charged her with entering the house surreptitiously, knowing that she had no right to do so.
Assuming that the words are susceptible of that construction, nevertheless, the appellant had the right to use them, provided he did so in good faith and without intention to insult. If the appellee did, in fact, enter the house surreptitiously, the appellant had the right to so say. So, likewise, if he, in good faith, believed such to be the fact. 172 Miss. at 80, 81, 157 So. at 419. (Emphasis added.)
It was further held that the statute did not abolish the rule of privilege; and, when it was apparent that this privilege had not been exceeded, the court should say so. The Court held that the appellant's request for a directed verdict, after the evidence, should have been sustained.
In Salvo v. Edens, 237 Miss. 734, 743-744, 116 So.2d 220, 223-224 (1959), a dentist had written a letter concerning a past due account. The testimony was all taken in this case, and the Court said:
We have carefully reviewed the testimony in this case and given due consideration to the language complained of and to the circumstances under which said language was used, and we have come to the conclusion that the words complained of are clearly not within the contemplation of the actionable words statute. It is probably true that the language complained of was written by the appellant in anger because he had been unable to get the appellee to make any payment on his fee for his services, but words not within the contemplation of the statute do not become actionable because prompted by anger. Cooper v. Davidson, supra. To refer to one who has lost his teeth as toothless is not to impute to him anything of a degrading nature, or of a nature subjecting him to infamy, or scorn, or ridicule, but is merely to call attention to an existing condition. To point out such condition in another may cause embarrassment but it is not insulting and calculated to lead to a breach of *689 the peace. Manifestly, the appellee did not consider the words as insulting and calculated to lead to a breach of the peace since she waited seven months after the complained of letter was written before taking action and bringing this suit, and brought it then only after the appellant had sued her and her husband in the justice of the peace court for the recovery of his dental bill. Toothlessness is a misfortune but not a disgrace. While to comment on it to one's face may cause embarrassment and transcend the bounds of propriety and tact, such comment is not, in our opinion, of a nature insulting and calculated to lead to a breach of the peace. We are, therefore, of the opinion that the words complained of are not within the purview of the actionable words statute and that the trial court erred in denying to the appellant his request for a peremptory instruction. This conclusion renders it unnecessary that we deal with the other assignments of error. The judgment of the court below will therefore be reversed and judgment rendered here for the appellant. (Emphasis added.)
Although not presented by the briefs, the question arises as to whether our actionable word statute has any extraterritorial effect so as to create a cause of action for words spoken in North Carolina.
The declaration charges affirmatively that the original words were spoken in the state of North Carolina. It then charges that the co-defendant repeated the words, but it is not shown whether the co-defendant repeated said words in Mississippi, North Carolina or where. The declaration therefore squarely presents on its face the question as to whether said statute does affect, or apply to, words spoken in North Carolina or outside this State. It is not shown that North Carolina has a statute similar to our Section 1059. As shown by all of the authorities, this type of statute, in those states that have same, was enacted in the hope of preventing duelling and violence.
The general rule as to the extraterritorial effect of a statute is stated in 50 Am.Jur. Statutes sections 485 and 487.
Section 485.
It is frequently declared that statutes can have no extraterritorial effect. By this statement, it is meant that legislative enactments can only operate, proprio vigore, upon persons and things within the territorial jurisdiction of the lawmaking power, and that no law has any effect, of its own force, beyond the territorial limits of the sovereignty from which its authority is derived. Thus, the general rule is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. A statute which purports to have such operation is invalid. A statute may, however, be valid in so far as it relates to persons or things within the jurisdiction and invalid in so far as it relates to persons and things outside the jurisdiction. It has also been declared that a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries.
Section 487.

Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it, and it is generally so construed. An extraterritorial effect is not to be given statutes by implication. Accordingly, a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it. These rules apply to *690 statutes using general words, such as "any" or "all," in describing the persons or acts to which the statute applies. They are particularly applicable where the statute would be declared invalid if given an interpretation resulting in its extraterritorial operation.
This statute, Section 1059, indicates no legislative intention that it shall operate beyond the borders of the state, but is designed to maintain peace within the state.
The specific question under consideration was decided by the Virginia Court in Davis v. Heflin, 130 Va. 169, 107 S.E. 673 (1921). A letter written by the appellant in Virginia addressed to a third party in Washington, D.C., contained defamatory statements. It was opened in the office of the third party by another person and a copy sent to the appellee in Virginia. The declaration contained three counts; one for common-law libel, and two for insulting words under the Virginia statute on actionable words. Appellant contended that the evidence showed publication only in Washington, D.C., and not in Virginia, and there being no proof of a statute in the District of Columbia similar to the Virginia statute, there could not be a recovery in this case under the Virginia statute. The Court in passing upon this contention said:
It is conceded, and the law to that effect seems to be well settled, that words actionable at common law may be sued on in a common-law action in any jurisdiction where the defendant may be found; but it appears to be equally well settled that, where the action rests upon a statute and the words were spoken or published exclusively in a state other than that in which the action was brought, the plaintiff must prove as a fact that a like statute was in force in such other state. Stout v. Wood, 1 Blackf. (Ind.) 71; Landgon v. Young, 33 Vt. 136, 137; 17 R.C.L. p. 371, § 120; 9 Ann.Cas. 383, note; L.R.A. 1918F, 1026.
130 Va. at 172, 107 S.E. at 674.
The rule is generally stated in 15A C.J.S. Conflict of Laws § 4(11), pages 406, 407, and 408.
While there are numerous decisions to the effect that a right of action for tort created by statute in one state may be sued on in another in case the statutes of the two states are substantially similar, and others which state substantially the same rule, but lay greater stress on the similarity of the statutes, by requiring that a statute of similar import exist as a part of the law of the forum * * *.
Further, from the same authority:
There is apparently no conflict in the decided cases on the point that as far as the right of action is concerned it must stand if at all on the statute of the state where the injury occurred and not of the state where the redress is sought, so that, if no cause of action is created at the place of wrong, no recovery can be had in any other state. (Emphasis added.)
In this case the declaration specifically charges that the original statements were made in the state of North Carolina, but it does not say where the republication of said statements were made. Allegations of the declaration are taken most strongly against the pleader, and we must proceed on the idea that the republication was not in the State of Mississippi, and on the fact that a declaration to withstand a demurrer must state a cause of action. Certainly it was the obligation of the pleader to show that the republication was in Mississippi, but he does not.
Under the above authorities, it is essential to the maintenance of this action that the State of North Carolina have an actionable word statute, at least similar to ours. In order to prove same it should be pled, if it exists.
Consideration has been given to the case of Mitchell v. Craft, 211 So.2d 509, 510 *691 (Miss. 1968). In that case, there was an automobile collision in Louisiana, in which residents of Mississippi were killed and all parties to the collision were residents and citizens of this State, and this Court held:
This case involves a choice-of-law or conflict-of-law problem in an action for wrongful death resulting from an automobile accident, in which plaintiff's decedent and defendant's decedent were in separate cars. Both decedents were domiciled in Mississippi, their estates are being administered here, and whatever expectations they might have had were centered in Mississippi. This State has a comparative negligence statute and Louisiana has the common-law rule by which contributory negligence bars recovery. We modify the previously existing rule in this jurisdiction, which applied invariably the law of the place of injury, and hold that under the factual situation existing in this case, the most substantial relationships of the parties and the dominant interest of the forum require application of Mississippi law, in accordance with the principles summarized in the Restatement (Second) Conflict of Laws sections 175, 145, 164 and 6 (Proposed Official Draft, Adopted May 24, 1968).
There was involved in Mitchell a transitory common-law action based on negligence. Unquestionably an action under Louisiana law arose from what occurred.
In the instant case no action arose in North Carolina under the law of that State, and we cannot create by statute a cause of action for another state. In the absence of a showing of a similar North Carolina statute, no cause of action was created by the words there spoken; in the absence of a cause of action, how can there be a choice-of-law or conflict-of-law problem?
Further, our Legislature in adoping section 1059 was interested and empowered to act in reducing crime, preventing violence, and maintaining peace within its own borders, and not within other states, recognizing that such matters were within the province and power of each state.
The case is affirmed.
Affirmed.
ETHRIDGE, C.J., and BRADY, INZER, and ROBERTSON, JJ., concur.