GRANTHAM *v.* WILKES *et al.*[*]

(Division A.    June 9, 1924.)

[100 So. 673.    No. 24057.]

1. LIBEL AND SLANDER.    *"Absolutely privileged communication"* defined.

In the law of libel, an "absolutely privileged communication" is one made in the interest of the public service or the due administration of justice, and is practically limited to legislative and judicial proceedings and other actions of state.

2. LIBEL AND SLANDER.    *"Qualifiedly privileged communication,"* defined.

A "qualifiedly privileged communication" is one made in good faith on any subject-matter in which the person communicating

has an interest or in reference to which he has a duty to a person having a corresponding interest or duty.

3. LIBEL AND SLANDER. *Statements in petition for pardon qualifiedly privileged.*

Statements made in a petition for a pardon addressed to the Governor and pardoning board, under section 124 of the Constitution and chapter 106, Laws of 1916, are qualifiedly privileged.

4. LIBEL AND SLANDER. *Petition by persons other than applicant for pardon qualifiedly privileged.*

The requirement of section 124 of the Constitution that the applicant for a pardon shall publish his petition therefor does not require the petition to be signed by the applicant, and such a petition signed by persons other than applicant for the pardon is within the qualifiedly privileged rule.

---

*Headnote 1. Libel and Slander, 36 C. J., section 204; 2. Libel and Slander, 36 C. J., section 205; 3. Libel and Slander, 36 C. J., section 235; 4. Libel and Slander, 36 C. J., section 235.

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Action by B. F. Grantham against Charles M. Wilkes and others. From a judgment of dismissal, plaintiff appeals. Reversed and remanded.

*Mize & Mize,* for appellant.

We shall present only three questions in this brief, as they are the three questions upon which the case hinges: 1. Was the matter complained of libelous? 2. If it is libelous, were the appellees, as publishers of the newspaper publishing said libelous matter, liable? 3. Was the alleged libelous matter privileged under section 124 of the Constitution of Mississippi?

I. That the alleged matter was libelous needs no argument to demonstrate. It accuses the appellant of perjury, which makes it libelous *per se,* and, after accusing him of perjury, said that he had to commit perjury to save himself from prosecution for stealing two cows that Lacy

was charged with stealing, thereby implying that he stole the cows himself which Lacy was convicted of stealing. So the publication not only holds appellant up to contempt but charges that he was guilty of two felonies. Under *Brooks* v. *Railroad Company,* 69 Miss. 168, such matter is libelous. Also, under sections 84, 127, Newell on Libel & Slander, (3 Ed.), and cases there cited.

II.    Now, is a newspaper liable for publishing a libelous article originating with others? The law is well settled that a newspaper or anybody who publishes or repeats a libel is as guilty as the one who originates it, on the theory that "talebearers are as bad as talemakers." Newell on Libel and Slander (3 Ed.), sec. 435, p. 425. *Call* v. *Larabee, et al.,* 60 Iowa, 212, is a case very much like the instant one.

In *Simmons* v. *Holder,* 13 Minn. 249, the court held that a newspaper advertisement describing a horse as stolen and stating that the thief was believed to be Wm. H. Simmons of Bell Plain was libelous and the newspaper was liable for the publication.

There did not have to be actual malice on the part of the newspaper, appellees, towards the appellant, for it to be liable for publishing this libelous language, for when the speaking or publishing of slanderous words is once proved, legal malice is inferred. *Astruc* v. *Star Company,* 182 Fed. 705; Newell on Libel & Slander (3 Ed.), sec. 389, p. 393. We therefore say that the appellees are clearly liable for publishing said libelous matter.

III.    Our third question goes to appellees' contention that the publication was privileged under section 124 of the Constitution.

The petition containing the libelous matter is not signed by the applicant for pardon, Jeff Lacy, himself. It just seems to be a petition by enthusiasts for Jeff Lacy, containing these highly libelous accusations against appellant, signed by them and presented to appellees' newspaper for publication.

It would be a monstrous proposition for the state to have the power to compel a witness to come into court and testify against the defendant in a state case, and then for the defendant, after he had been convicted, to have a petition for pardon published in a newspaper asserting that said state's witness was lying, had committed perjury and had it to do to keep from being convicted himself of the crime the applicant for pardon was convicted of, and then for the newspaper publishing this libelous petition to say that it was not liable because this was a privileged publication under section 124 of the Constitution. On the question of privilege, one of the earliest cases is that of *Coffin* v. *Coffin,* 4 Mass. 1, (1808) quoted in Bigelow on Torts, Students Edition.

*White & Ford,* for appellees.

I. As to the first proposition, we say that while under some circumstances the charge made might be libelous, if false, still in this case it is not libelous.

II. The other two propositions of appellant involve solely the right to publish, or really the question of privilege. We contend the publication is absolutely privileged and it makes no difference whether it is libelous or not, but if it were only qualifiedly privileged, and were libelous *per se,* express malice would be necessary and it is not contended there was express malice. It being so clear, however, that the publication was and is absolutely privileged, we deem it unnecessary to discuss any other point. Chapter 106, Laws 1916, which act creates the pardoning board, makes it a condition precedent to the consideration by the board of an application for pardon, that the applicant publish his application for thirty days in a newspaper in the county where the crime was committed. No application can be considered until it has been published as above stated.

If authority be needed in the face of section 124 of the Constitution, and this act of the legislature, we cite a few for the convenience of the court.

The investigation of charges against officers or men are of *quasi*-judicial character, and for that reason are privileged both with respect to preliminary inquiries to ascertain the facts and the testimony given and the accusations made on the trial of the charges.   Note to *Kemper* v. *Fort,* 123 A. S. R. 647.   A proceeding before the Governor for extradition of the alleged fugitive from justice is of a *quasi*-judicial character, and hence protects communications made and other proceedings had in the course thereof.   *Brown* v. *Globe Printing Co.,* 112 S. W. (Mo.) 462. Note to *Kemper* v. *Fort,* 123 A. S. R. 647; Starkie on Slander and Libel, section 213.

In *Fritz* v. *Williams,* 16 So. 359, Judge WHITFIELD said at 360, that a deposition given in an investigation before a Masonic Lodge was one of qualified privilege.   See, also, *Sands* v. *Robison,* 12 Smedes and Marshall, 704, 51 Am. Dec. 134, an action for libel against a justice of the peace for voluntarily appearing before the grand jury and reporting information that had come to him concerning the plaintiff.

One to whom application is made for information may, within the limits thereof, write or speak words which, under other circumstances, would subject him to suit for libel or slander, but the scope of the defamatory matter must not exceed the exigency of the occasion.   *Ala. R. R. Co.* v. *Brooks,* 69 Miss. 168, 30 A. S. R. 531.

Privileged communication is one made under such circumstances as to repel the legal inference of malice and to throw upon the plaintiff the burden of showing malice otherwise than by merely proving the falsity of the charges made.   Note to *Ala. R. R. Co.* v. *Brooks,* 30 A. S. R. 533.   The question whether publication is privileged is one of law for the court unless the facts are disputed.

Express malice must be shown in actions of slander where the words are spoken in the exercise of the duty or for good motive.   *Farris* v. *Starke,* 33 A. D. 536; *Mo. Pac. R. R.* v. *Richmond* (Tex.), 15 A. S. R. 801.

When words imputing misconduct to another are spoken by one having a duty to perform, and the words

are spoken in good faith and in the belief that it comes within the discharge of that duty, or where they are spoken in good faith to those who have an interest in the communication and a right to know and act upon the facts stated, no presumption of malice arises from the speaking of the words, and therefore no action can be maintained in such cases without proof of express malice. *Mo. Pac. R. R. Co.* v. *Richmond,* 15 A. S. R. 800.

The case of *Bradley* v. *Heath,* which is cited in *Sands* v. *Robison, supra,* is cited in the following: *Moore* v. *Butler,* 48 N. H. 161, holding words spoken in good faith in the performance of duty privileged; *Sheckell* v. *Jackson,* 10 Cush. 25, holding libelous publication honestly made in performance of duty justifiable; *Rude* v. *Nass,* 79 Wis. 321, 24 A. S. R. 717, holding defamatory communication conditionally privileged if made in good faith in performance of duty or to one having an interest in the facts.

It has been frequently held and recognized in numerous decisions that statements made in connection with church organizations and proceedings, and in connection with lodges and fraternal associations are qualifiedly privileged, 17 R. C. L. 369, secs. 118-119. Here the Constitution makes the publication necessary. No petition can be considered unless the publication is made. No ground on which the pardon is sought can be considered unless it is set up in the petition and published. The Governor is limited to the grounds of the application or petition. He has the power and authority to consider these grounds, and these grounds only, and to give them such weight as the record justifies.

In the addenda to counsel's brief he simply attempts to abolish the maxim *qui facit per alium facit per se.* Neither the constitution nor statute requires the convict to sign his petition for pardon. He is not free to act for himself and in many cases it is only through others that he can act in the preparation and publication of his petition. The question of materiality and the question of privilege were questions both for the court, and we sub-

mit that the court correctly ruled in holding that this publication was privileged.

SMITH, C. J., delivered the opinion of the court.

The appellees are the owners and publishers of a newspaper known as the Daily Herald, and are sued herein by the appellant for libel on a declaration alleging that they "published in the said newspaper owned by them as aforesaid, to-wit, the Daily Herald, with the circulation aforesaid, willfully, wantonly, maliciously, and falsely, the following publication of and concerning the plaintiff, B. F. Grantham, to-wit, 'that the said Jeff Lacy was convicted entirely upon the testimony of one B. F. Grantham, which said testimony was unreliable, untrustworthy, and indicated very clearly that Grantham, in order to shield himself and to avoid prosecution for stealing two (2) cows which Lacy was charged with stealing, had to testify against said Jeff Lacy, and had to allege in his testimony that the said Lacy had stolen the said two cows.'"

One of the appellees' pleas to this declaration alleges that the publication set forth in the declaration was part of a petition for a pardon for Jeff Lacy who was then serving a sentence in the state penitentiary on a conviction of grand larceny, and was published by the appellees for Lacy in good faith and without malice toward appellant. A copy of this petition was filed as an exhibit to the plea, and it appears therefrom that it was signed by a number of persons, but not by Lacy himself. A demurrer to this plea was overruled, whereupon the appellant by replication challenged the appellees' good faith and want of malice in publishing the petition. A demurrer to this replication was sustained, and, the appellant having declined to plead further, his cause was dismissed, from which judgment he has appealed to this court.

Section 124 of the Constitution requires all petitions for the pardon of a felon to be published, and chapter 106, Laws of 1916, by which the pardoning board was created,

requires all petitions for a pardon, irrespective of the grade of the offense committed by the person for whom the pardon is desired, to be published before the pardon therein prayed for can be granted. The question presented for decision is whether the petition for the pardon of Lacy was a privileged communication, and, if so, to what extent.

"A privileged communication is one containing matter which but for the occasion on which it is made would be defamatory and actionable," and may be divided into two classes: "The absolutely privileged, and the conditionally or qualifiedly privileged." 17 R. C. L. 328. An absolutely privileged communication is one made in the interest of the public service or the due administration of justice (25 Cyc. 276; Newell on Slander and Libel [2 Ed.], 418), "and is practically limited to legislative and judicial proceedings and other actions of state." 17 R. C. L. 330.

"A communication made in good faith on any subject-matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation." 17 R. C. L. 341; 25 Cyc. 385; *Sands v. Robison,* 12 Smedes & M. 704, 51 Am. Dec. 132.

The public interest in a petition for a pardon is not such as to bring it within the rule of absolute privilege, but the interest of the petitioner therein, and the fact that it is required by law to be published before the pardon therein prayed for can be granted, bring it manifestly within the rule of qualified privilege.

But it is said by counsel for appellant that, conceding that the petition for a pardon is within the privilege rule, the privilege extends only to the publication of a petition signed by the person for whom the pardon is sought. In support of which they refer to the re-

quirement of section 124 of the Constitution that the applicant for a pardon shall publish his petition therefor. This section of the Constitution does not expressly require a petition for a pardon to be signed by the person for whom the pardon is requested, nor is such a requirement necessarily implied by the use of the words "his petition," for when signed and presented for the petitioner by others it becomes as much his petition as if he had signed and presented it himself. Moreover, chapter 106, Laws of 1916, does not require the applicant for a pardon to publish his petition therefor, but simply requires "the application therefor" to be published.

The court below committed no error in overruling the demurrer to the appellee's plea to the declaration, but, since the replication to this plea challenged the appellee's good faith in publishing the petition, the demurrer to the replication should have been overruled.

*Reversed and remanded.*