Charles W. BURRIS and Novelties, Unlimited, a Mississippi Corporation, Plaintiffs,

v.

SOUTH CENTRAL BELL TELEPHONE COMPANY, a Corporation, and Bobbie Carr, Defendants.

Civ. A. No. H80–0068(N).

United States District Court, S. D. Mississippi, Hattiesburg Division.

April 15, 1982.

Charles H. Reid, Hattiesburg, Miss., for plaintiffs.

Christy D. Jones, W. Scott Welch, III, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

WALTER L. NIXON, Jr., District Judge.

This cause is now before the Court on defendant South Central Bell Telephone Company's (SCB) "Motion for Summary Judgment, or in the alternative, for Partial Summary Judgment," and defendant Bobbie Carr's (Carr) "Motion to Dismiss for Failure to State a Claim or for Judgment on the Pleadings or for Summary Judgment." The plaintiff, Charles W. Burris (Burris) and Novelties, Unlimited, Inc. (Novelties) filed this suit in the Circuit Court of Lamar County, Mississippi against SCB and its employee, Bobbie Carr, seeking actual and punitive damages for invasion of privacy, illegal use of telephone service, and wrongful change of Novelties' telephone number. The defendants removed the action to this Court on the ground of diversity of citizenship, setting forth in their removal petition that there was diversity of citizenship between plaintiffs and SCB, the only defendant properly joined in the suit, and further averring that the defendant Carr had been fraudulently joined as a defendant for the sole purpose of destroying diversity and thus preventing removal.

At the pretrial conference on April 10, 1981, the plaintiffs served defendants' counsel with their Motion to Remand this cause to the state court, denying that the defendant Carr was joined for purposes of defeating federal court jurisdiction. Inasmuch as the petition for removal and the bond filed with this Court establish that Carr did join in the petition despite plaintiff's assertion to the contrary, the issue that remains to be disposed of by this Court is whether the complaint states a cause of action against Bobbie Carr for invasion of privacy, for which SCB would also be liable. In addition, the Court will address the question of the propriety of the telephone number change by South Central Bell.

According to the Complaint, plaintiff Burris is president and principal stockholder of Novelties, a specialty advertising busi-

ness in Hattiesburg, Mississippi. On or about September 1, 1978, Burris contracted with SCB for telephone service to Novelties at its place of business, which is also Burris' residence. Novelties was assigned a telephone number, and a credit card was issued at Burris' request. On or about January 1, 1980, SCB allegedly "arbitrarily and capriciously" changed the telephone number of Novelties, and in addition issued a new card with a new number. Prior to the change in numbers, however, plaintiffs had allegedly prepared letterheads and other business stationery showing the telephone number originally assigned.

The charges asserted against the defendant Carr involve her placing of a call to the plaintiffs in which Burris was accused of "fraudulent use of his telephone credit card." The Complaint further alleges that Carr discussed with Burris the use of his credit card, stating that Burris had made fraudulent use of his telephone card and was being "turned in for fraud," and that the action of the defendant Carr "was an abusive, unwarranted invasion of Burris' privacy." There is no allegation that Carr had anything whatsoever to do with changing Novelties' telephone or credit card number.

After this case was removed, SCB and Carr had filed their joint answer in which the defendant Carr maintained her objection to the propriety of her joinder in this suit.

The Court finds that although the plaintiffs' telephone number was changed in January, 1980, and a new credit card was issued with the changed number, SCB had previously notified the plaintiffs of the number change, and the plaintiffs neither telephoned nor directed any correspondence to SCB concerning this proposed change. SCB alleges that it did not change the telephone number of the plaintiff Novelties "arbitrarily and capriciously" but for valid business reasons, in accordance with its duly filed tariffs and the regulations of the Mississippi Public Service Commission. Carr admits that she telephoned Burris and explained that eight calls had been billed to the initial credit card number, which was no longer a valid credit card number because

of the changed telephone number. Carr further alleges that she merely asked Burris' permission to bill the calls to the new number and explained that Burris should no longer use the old credit card number. In light of this, SCB asserts that this conversation was in furtherance of the legitimate business objectives of SCB made in the ordinary course of business and thus was a privileged communication for which neither defendant is liable.

The plaintiffs allege that Carr's statements that she was going to have the matter "turned in for fraud" constituted a willful, malicious intent to intimidate Burris by making him apprehensive of possible criminal or civil action that may be taken against him, "resulting in his becoming distraught, suffering wounded feelings and mental suffering." Burris further charges that because of the above statement his personal sales of advertising supplies and management of Novelties was greatly affected and hindered. Additionally, plaintiffs allege that after the above change of the telephone number that directory information continued to report the earlier number; that customers experienced problems in being unable to contact Novelties; and that the business of both plaintiffs and the personal life of Burris had been affected, because customers and friends had either not been able to reach plaintiffs or had experienced problems in doing so. Burris claims damages because of mental anguish, suffering, and interference with his occupation, and Novelties asks for compensation for loss of business.

## SOUTH CENTRAL BELL'S MOTION FOR SUMMARY JUDGMENT AS TO THE TELEPHONE NUMBER CHANGE

■ The Complaint charges SCB with the "arbitrary and capricious" changing of the telephone number of Novelties, Unlimited. Telephone public utilities are regulated by the Mississippi Public Service Commission under the provisions of the Public Utility Act of 1956, Miss.Code Ann. Section 77–3–1 (1972). Section 77–3–5 grants the Mississippi Public Service Commission "ex-

clusive original jurisdiction of the intrastate business and property of public utilities." This grant of authority includes the power to prescribe rules and regulations governing such utilities under Miss.Code Ann. Section 77–3–45 (1972). In furtherance of this legislative objective, the Mississippi Public Service Commission requires that service rules and regulations of each public utility be filed with the Commission which then become subject to its approval, with its concomitant right to require certain changes therein. Pursuant to Miss.Code Ann. Section 77–3–33 (1972), these sanctioned rules supersede all other requirements of law and include certain regulations relating to telephone numbers. Sub paragraph E of said Rule 44 provides:

E. Assignment of Number

The assignment of a telephone number to a subscriber's telephone service shall be made at the discretion of the telephone company. The subscriber has no proprietary right in the number and the company may make such reasonable changes in telephone numbers and central office designations as may be required in order for the company to render efficient telephone service. The company shall give the subscriber who may be affected by such change in telephone numbers as reasonable notice thereof as circumstances will permit.

Additionally, SCB has filed tariffs that set forth its rules and regulations pertaining to such telephone numbers. Under tariff (a) Section A–2.3, Establishment or Furnishing of Services, there is included a Section 11 which is entitled *Provision and Ownership of Telephone Numbers.* That section is as follows:

Telephone numbers are the property of the company and are assigned to the service furnished the subscriber. The subscriber has no property right to the telephone number or any other call number designation associated with services furnished by the company and has no right to the continuance of service through any particular central office. *The company reserves the right to change such numbers, with a central office designation associated with such numbers, or both,* *assigned to the subscriber, whenever the company deems it necessary to do so in conduct of its business.* (Emphasis added)

SCB has submitted in support of its Motion the affidavit of Elton King, general manager of its residence service. Mr. King asserts that the change of Novelties' telephone number was necessary to provide it with improved electronic switching service, and that before the change became effective SCB advised the subscriber of the proposed change and solicited inquiries concerning it. It is apparent to this Court that this was done on at least two occasions via correspondence mailed to the plaintiffs.

The plaintiffs have presented no authority for the proposition that SCB was not entitled to change the telephone number of Novelties. There is neither a challenge to the tariffs nor the rules of the Mississippi Public Service Commission which state that the subscriber has no proprietary right to any particular telephone number. Furthermore, Burris admits that he received the notice of the proposed change and that he had no objection to the revision in telephone numbers.

After reviewing the evidence and all factual inferences therefrom in the light most favorable to the plaintiffs and additionally resolving all doubts about the facts in favor of the plaintiffs, we find that there is no genuine issue as to any material fact concerning the authority for or propriety of the telephone number change. For the foregoing reasons, SCB is entitled to summary judgment on this question.

SOUTH CENTRAL BELL'S AND BOBBIE CARR'S MOTIONS TO DISMISS AND/OR FOR SUMMARY JUDGMENT AS TO THE CLAIM FOR INVASION OF PRIVACY

Since there is no doubt that the defendant Carr telephoned the plaintiff Burris for the purpose of obtaining proper billing information for certain long distance toll calls billed to the credit card issued to Novelties, it is clear then that the only disputed facts relate to the substance of the phone conver-

sation. The Court is of the opinion, however, that the plaintiffs' version, which we accept for this purpose, does not preclude summary judgment.

■ The plaintiffs' original complaint sought damages for the actions of the defendant Carr which allegedly constituted an "abusive, unwarranted invasion of Burris' privacy." It now appears that they now seek to recover for intentional infliction of emotional distress. The Restatement (Second) of Torts, section 46, sets forth the requisite elements of this cause of action:

> One who by extreme and outrageous conduct intentionally and recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> ... generally, the case is one in which the recitation of the fact to an average member of the community would arouse as a resentment against the actor, and lead him to exclaim, 'outrageous.'
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. comment (d).

As previously stated, Bobbie Carr merely telephoned plaintiff Burris to obtain billing information. The conversation took place at 10:30 a. m. and it is apparent that no one else was present or overheard the remarks that were made. There were no previous or subsequent conversations concerning this matter.

The plaintiffs rely almost exclusively upon the case of *Lyons v. Zale Jewelry Company*, 246 Miss. 139, 150 So.2d 154 (1963). The *Lyons* case involved a situation in which the plaintiff received a telephone call from a Mr. Welch who represented himself as an attorney for Zale Jewelry Company, and inquired concerning the whereabouts of the plaintiff's son. It was alleged that Welch became abusive when the plaintiff informed him that she did not know where her son was and that she was not responsible for his debts because he was over 21 years of age. The facts of that case established that Welch became highly incensed, began to yell obscenities into the

telephone, and threatened the plaintiff with *immediate* criminal prosecution. As a result, the plaintiff suffered severe emotional distress and physical complications. The Mississippi Supreme Court, which reversed the lower court, concluded that when definite and objective physical injuries are produced as a result of emotional stress wrongfully caused by the defendant, the defendant may be held liable for the physical consequence notwithstanding the absence of physical impact upon the plaintiff. The facts of *Lyons* are clearly distinguishable from the case sub judice in that Carr neither cursed nor threatened Burris with immediate prosecution. Furthermore, in reaching its conclusion in *Lyons* the Mississippi Supreme Court quoted from the predecessor to Section 46 noting "that one who, without a privilege to do so, intentionally causes severe emotional distress to another is liable." We adhere to the above generally accepted criteria for intentional infliction of emotional distress, but cannot conclude that the statements by Carr rose to that level of "outrageous conduct" which was clearly present and determinative in *Lyons*. As will be discussed, the Court views Carr's statements as clearly privileged.

Turning next to the allegation concerning the invasion of privacy by Carr and SCB, inasmuch as there are no allegations concerning any publication of the complained of actions, it is obvious that the only invasion of privacy complained of in the case sub judice must be an "unreasonable intrusion" into the plaintiffs' private affairs.

■ Comment (d), Restatement (Second) of Torts, Section 652(b) relating to "intrusion upon seclusion" clearly establishes the necessity for more than one telephone call as to this type of "intrusion."

> d. There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as a result of conduct to which the reasonable ordinary man would strongly object.... It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff that

it becomes a substantial burden to his existence, that is that his privacy is invaded.

This Court is not aware, nor have the plaintiffs cited any case in which a single telephone call, unaccompanied by some other means of intrusion, has been held to constitute an invasion of privacy. In order to create a valid cause of action for invasion of privacy there must be a pattern of harassment "or a communication of such a nature as to possess a vicious quality." *See e.g., Household Finance Corp. v. Bridge*, 252 Md. 531, 250 A.2d 878 (1969); *Zimmerman v. Associates Discount Corp.*, 444 S.W.2d 396 (Mo.1969). We find no such pattern present here. In light of the foregoing, it is clear that Bobbie Carr's telephone call and conversation with Burris did not constitute an actionable "intrusion upon seclusion" or an actionable invasion of privacy.

 This finding is given added strength by virtue of the fact that under Mississippi law Carr's communications are clearly privileged. Mississippi follows the rule that a qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if made to a person having a corresponding interest or duty, even though it contains a matter which, without the privilege, would be actionable and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. *Grantham v. Wilkes*, 135 Miss. 777, 100 So. 673 (1924). The uncontroverted affidavit of Carr establishes that she made the telephone call to Burris in furtherance of legitimate business interests, in good faith, and without malice. The plaintiffs have presented absolutely no evidence that Carr acted in less than good faith, with malice, or with intent to cause the plaintiff emotional distress. It is clear that Carr was attempting to resolve a billing controversy between Burris and SCB, Carr's employer.

We are cognizant of the fact that one must be free to adjust controversies to protect one's own business interests, and it is for this reason that the existence of a privilege is necessary. A creditor has the right to take reasonable action to pursue its debtor and persuade payment. *See C.I.T. v. Correro*, 192 Miss. 522, 6 So.2d 588 (1942); *Killebrew v. Jackson City Lines*, 225 Miss. 84, 82 So.2d 648 (1955); *Hooks v. McCall*, 272 So.2d 925 (Miss.1973).

The Court is of the opinion that the actions of Carr were undertaken in good faith on an occasion that was privileged and related to a matter in which both her employer and the plaintiffs had a common interest. In light of the foregoing the Court finds that the defendant Carr committed no invasion of privacy, and therefore South Central Bell has no liability to the plaintiffs herein. In making this determination we find that the defendants have established their right to judgment "with such clarity" that the plaintiffs could not recover under any cognizable circumstance herein. *See Heller v. Namer*, 666 F.2d 905 (5th Cir. 1982).

For these reasons the Court is of the opinion that defendant Carr's Motion for Summary Judgment is well taken and is hereby granted. Furthermore, since the Court has determined that the telephone call and conversation were privileged and Carr's communications did not exceed the scope of that privilege, South Central Bell is likewise entitled to summary judgment on this question.